James C. MILLER, Ralph Brown, Vincent Gray, Charles Knight, Michael Jones, Harold G. Williams, Jerry Hemingway, Barry C. James and Dwayne Jackson, Plaintiffs,

v.

HYGRADE FOOD PRODUCTS CORPORATION and Sara Lee Corporation, Defendants.

No. CIV. A. 99–1087.

United States District Court, E.D. Pennsylvania.

March 24, 2000.

Robert T. Vance, Jr., Philadelphia, PA, for plaintiffs.

Howard A. Rosenthal, Philadelphia, PA, for defendants.

### MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Presently before the Court is the motion of the defendant Hygrade Food Products ("Hygrade") to dismiss the hiring, promotion and termination claims of plaintiffs James C. Miller, Ralph Brown, Vincent Gray, Charles Knight, Michael Jones, Harold G. Williams, Jerry Hemingway, Barry C. James and Dwayne Jackson (Document No. 24) for lack of standing, the motion of Hygrade for a protective Order limiting the scope of plaintiffs written discovery related to plaintiffs' hiring, promotion and termination claims (Document No. 38), and the motion of Hygrade for a protective Order limiting the temporal scope of plaintiffs written discovery (Document No. 37), as well as the responses and replies thereto. Also before the Court is the motion of plaintiffs to join additional parties (Document No. 35) and the response thereto. For the reasons set forth below, the motion of Hygrade to dismiss the hiring, promotion and termination claims for lack of standing will be denied. Accordingly, the motion for a protective Order limiting the scope of the plaintiffs' written discovery will also be denied. The motion for a protective Order limiting the temporal scope of the plaintiffs' written discovery will be granted. Finally, the motion to join additional parties will be denied.

### I. Background

Hygrade employs approximately 300 employees at its Philadelphia facility, approximately 58% of whom are minorities. Hygrade produces and packages hot dogs, bacon and ham at its Philadelphia facility. Nine current employees at Hygrade's Philadelphia facility initiated this lawsuit, seeking to represent a broad-based class of all African–Americans employed at or who have sought employment at the Philadelphia facility during the last decade. Plaintiffs allege that Hygrade has engaged in a pattern and practice of race discrimination and racial harassment. Specifically, plaintiffs allege that Hygrade has discriminated against African–Americans with regard to hiring, promotion, compensation, work assignments, training and disciplinary practices, including discharge. The complaint contains factual allegations describing discrimination against African–Americans in different job categories and in different forms. Many of the factual allegations describe situations in which African–American employees were treated differently than similarly situated white employees.

In a charge filed with the EEOC by named plaintiff Miller (and which is representative of the type of charge filed by other named plaintiffs), Miller alleges that Hygrade has "engaged, and continue to engage, in a pattern and practice of racial discrimination and racial harassment against African–American employees with regard to the terms and conditions of their employment." (Plaintiff's Answer to Defendant Hygrade's Motion to Dismiss Plaintiff's Hiring, Promotion and Termination Claims and Plaintiff's Cross–Motion to Join Additional Parties, ("Plt.Mem."), Exh. G, ¶ 2). Miller also alleges that "the pattern and practice of discrimination and racial harassment has created, and continues to create, a hostile and abusive work environment." (Id.). Miller further alleges that the defendants "have discriminated against African–American employees because of their race with regard to supervisory or managerial positions, work assignments and discipline." (Id. at ¶ 3). Finally, Miller asserts that he has filed the charge as a representative of and on behalf of all African–American employees at the Philadelphia plant. (Id. at ¶ 1).

## II. Standard

 Article III of the United States Constitution confines the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To present a justiciable "case" or "controversy" over which the federal courts have subject matter jurisdiction, a plaintiff must have standing. *Id.* at 560–61, 112 S.Ct. 2130 (standing is an "indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof"). Standing is the determination of whether a specific person is the proper party to bring a particular matter to a federal court for adjudication. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing involves a blend of constitutional requirements and prudential considerations. *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The "irreducible constitutional minimum" of standing contains three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent ac-

tion of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife,* 504 U.S. at 560–61, 112 S.Ct. 2130 (internal citations omitted, brackets and omissions in original).[1] The party invoking federal jurisdiction has the burden of establishing these elements. *Id.* at 561, 112 S.Ct. 2130.

 A challenge to the standing of a party raises the issue of justiciability and implicates the subject matter jurisdiction of a federal district court. Therefore, a motion to dismiss for want of standing is properly brought pursuant to Fed.R.Civ. Pro. 12(b)(1). *Tri–County Concerned Citizens Assoc. v. Carr,* 1998 WL 966019, at *3 (E.D.Pa. Nov.20, 1998); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION §§ 2.1, 2.3 (1994); 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE, CIVIL 2D, § 3531.15, at 95 n. 9 (2d ed.1984). Generally, when ruling on a motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(1), "a district court is not limited to the face of the pleadings. Rather, as long as the parties are given an opportunity to contest the existence of federal jurisdiction, the court 'may inquire, by affidavit or otherwise, into the facts as they exist.'" *Armstrong World Indus. v. Adams,* 961 F.2d 405, 410 n. 10 (3d Cir.1992) (quoting *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) (citations omitted)). Nevertheless, for purposes of ruling on a motion

---

**1.** Prudential considerations are a set of judge-made rules forming an integral part of "judicial self-government." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Although there is no single formula for evaluating every prudential standing question, several considerations falling within the general rubric of prudential standing are nevertheless typically invoked. *Conte Bros. Auto., Inc. v. Quaker State–Slick 50, Inc.,* 165 F.3d 221, 225 (3d Cir.1998). Thus, it is generally required (1) that a litigant "assert his [or her] own legal interests rather than those of third parties," (2) that courts "refrain from adjudicating 'abstract questions of wide public significance' which amount to

'generalized grievances,'" and (3) that a litigant demonstrate that the asserted interests are arguably within the "zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based. *Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 538 (3d Cir.1994) (citations omitted); *see also Trump Hotels & Casino Resorts v. Mirage Resorts,* 140 F.3d 478, 485 (3d Cir. 1998); *Davis by Davis v. Philadelphia Hous. Auth.,* 121 F.3d 92, 96 (3d Cir.1997); *UPS Worldwide Forwarding v. United States Postal Serv.,* 66 F.3d 621 (3d Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 210 (1996).

to dismiss for want of standing, as here, the trial court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501, 95 S.Ct. 2197.[2]

Finally, the standard for determining standing is not static. At the pleading stage, as here, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Lujan v. National Wildlife. Federation*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)); *Anjelino v. New York Times Co.*, 200 F.3d 73, 90 (3d Cir. 1999) (for purposes of standing, "nothing beyond a colorable allegation of injury is required of the Title VII plaintiff" at the pleading stage). In contrast, at summary judgment, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed.Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

## III. Discussion

Hygrade argues that the named plaintiffs, as current employees who have not been denied a promotion, have not alleged an "injury in fact" as a result of its hiring, termination or promotion practices and, therefore, these claims should be dismissed. In conjunction with its motion to dismiss, Hygrade also moves for a protective order from the plaintiffs discovery requests with respect to their hiring, termination and promotion practices. Plaintiffs counter by arguing that they have standing to bring an "across-the-board" action and that Hygrade has conflated the analysis of standing with the requirements of typicality and commonality under Federal Rule of Civil Procedure 23. Nonetheless, in an abundance of caution, plaintiffs also move to join additional parties.

### A. Standing

Although Hygrade's attack is focused on standing, to fully appreciate the significance of its argument and ultimately why

---

**2.** Hygrade correctly notes that a defendant may challenge the subject matter jurisdiction of a district court in one of two ways: (1) by a facial attack asserting the complaint fails to allege grounds sufficient to establish subject matter jurisdiction, or (2) by a factual attack to the existence of subject matter jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977); *Kronmuller v. West End Fire Co. No. 3 Fire Dep't*, 123 F.R.D. 170, 172 (E.D.Pa.1988). In a facial attack, a defendant challenges subject matter jurisdiction by asserting that the complaint, on its face does not allege sufficient grounds to establish subject matter jurisdiction. *Mortensen*, 549 F.2d at 891. In deciding a facial challenge, the court must assume that the allegations contained in the complaint are true. *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). In this circumstance, a court may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *See Mortensen*, 549 F.2d at 891; *Kronmuller*, 123 F.R.D. at 172. However, where the defendant challenges the subject matter of a federal court by factually attacking the jurisdictional allegations of the plaintiff as set forth in the complaint, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891; *United Transp. Union v. SEPTA*, 23 F.Supp.2d 557, 558 (E.D.Pa.1998). In assessing a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. The court may consider affidavits, depositions and testimony to resolve factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir.1997).

Hygrade implies that its challenge to the standing of plaintiffs is a factual attack. It is clear, however, that Hygrade does not challenge the factual allegations made in the complaint but rather contends that the plaintiffs have failed to allege an injury such that they may bring certain claims. Thus, its motion is properly understood as a facial attack and will be evaluated accordingly.

it must fail, it is useful to set the stage upon which this argument is played out by reviewing the evolution of the "across-the-board" class action and the interplay between the "across-the-board" class action theory and the requirements of certification under Rule 23. The reason for this is that many courts have addressed the issue of standing at the same time as class certification and, in so doing, have not been as diligent as they could in separating their analysis of Rule 23 from the issue of standing. The constitutional requirement of standing, however, is analytically distinct from question of whether the requirements of Rule 23 have been met. Thus, it is important to distinguish between issues that prevent class certification from the issue of whether a party has standing to bring an "across-the-board" class action.

### 1. Across-the-board Class Actions

The expansive "across-the-board" class action attack on employment discrimination was first articulated by Court of Appeals for the Fifth Circuit more than two decades ago. *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir.1969); *see also Wagner v. Taylor,* 836 F.2d 578, 588–90 (D.C.Cir.1987) (collecting cases and discussing "across-the-board" approach to Title VII class certification); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). This approach was subsequently recognized by the Court of Appeals for the Third Circuit in *Wetzel.*[3] 508 F.2d at 247; *Ladele v. Consolidated Rail Corp.,* 95 F.R.D. 198, 200–01 (E.D.Pa. 1982).

▆ Under the "across-the-board" theory the commonality and typicality requirements of Rule 23(a) were eased where an individual plaintiff alleged company-wide or pervasive discrimination. *Ladele,* 95 F.R.D. at 201 (collecting cases).

Courts applying this theory thus permitted a named plaintiff to represent a class consisting of all persons affected by the employer's discriminatory practice, although the individual plaintiff was only adversely affected by only one such practice, e.g., allowing a discharged employee to represent current employees. The rationale behind the theory was that the requirements of Rule 23 should be applied liberally "in order to vindicate the important public policy of equal employment opportunity advanced by Title VII." *Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 507 (E.D.Pa. 1977). Courts further reasoned that the question of whether the employer discriminated against its employees on the basis of race (or sex) is a question common to all class members, regardless of the factual differences in their individual circumstances, and that this single common question satisfied the requirement of Rule 23(b) that there be "questions of law or fact common to the class." *See Wagner,* 836 F.2d at 588; *Ciarrochi v. Provident Nat'l Bank,* 83 F.R.D. 357, 360 (E.D.Pa. 1979) (discussing rationale behind "across-the-board" class actions). With respect to typicality, courts reasoned that the common thread of discrimination supplies the requisite typicality. *Ciarrochi,* 83 F.R.D. at 361. The "across-the-board" theory was not, therefore, a theory under which traditional notions of standing were suspended or where courts exercised jurisdiction over cases where there was not "case" or "controversy" between the plaintiff and the defendant. *See Wetzel,* 508 F.2d at 247 n. 10 (former employee had standing to represent past and present employees in class action alleging discriminatory employment practices).

▆ Since its inception, however, the Supreme Court has considerably narrowed the scope of "across-the-board" class actions. *See General Tel. Co. of Southwest*

---

**3.** In *Wetzel,* the Court of Appeals held that a former employee, who was not entitled to reinstatement, could still be an adequate representative of a class of past and present employees alleging discriminatory employ-

ment practices. The Court of Appeals explicitly held that "[a] former employee has standing to bring such a suit." 508 F.2d at 247 n. 10.

*v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *East Texas Motor Freight, Inc. v. Rodriguez,* 431 U.S. 395, 406, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). In *Rodreguiz,* the Supreme Court held that the named plaintiffs were not members of the class they sought to represent because they had not suffered any injury as a result of the alleged discriminatory practices.[4] In light of the Supreme Court's statement that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members," some courts interpreted *Rodriguez* as a repudiation of the "across-the-board" approach to employment discrimination cases. *See, e.g., Hill v. Western Electric Co.,* 596 F.2d 99 (4th Cir.1979), *cert. denied,* 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979); *Hubbard v. Rubbermaid, Inc.,* 78 F.R.D. 631 (D.Md.1978). Other courts, however, including the Court of Appeals for the Third Circuit, did not view *Rodriguez* so broadly, holding that *Rodriguez* did not preclude a relaxed application of the Rule 23 certification requirements in "across-the-board" class actions. *Scott v. Univ. of Delaware,* 601 F.2d 76, 86 n. 19 (3d Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979).[5]

Subsequently, the Supreme Court made clear that the requirements of Rule 23 are to be rigorously applied. *Falcon,* 457 U.S. at 158, 102 S.Ct. 2364. In *Falcon,* the Supreme Court held that it was error to certify a class of Mexican Americans which included both disappointed job applicants allegedly victimized by discrimination in hiring practices and Mexican Americans allegedly suffering from discrimination in

promotions and in the terms of their employment where the named plaintiffs were current employees. The error, according to the Supreme Court was not that the plaintiffs lacked standing, but rather that the district court failed "to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364.

The Court reasoned that "[i]f one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation." *Falcon,* 457 U.S. at 158–59. The Court made clear that those seeking class certification cutting across employment status or job categories must make a "specific presentation" identifying the questions of law or fact common to the class representative and the members of the proposed class. *Id.* at 158, 102 S.Ct. 2364.

The *Falcon* decision did not, however, eliminate the "across-the-board" class action from the legal landscape. *Krell v. Prudential Ins. Co. Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions),* 148 F.3d 283, 312 (3d Cir.1998); *Shannon v. Hess Oil Virgin Islands Corp.,* 96 F.R.D. 236, 242 (D.Vi.1982). First, the Supreme Court agreed "with the proposition underlying the across-the-board rule-that racial discrimination is by definition class discrimination," recognizing that " 'suits alleging racial or ethnic discrimination are often by their very nature class

---

**4.** The Court concluded that the named plaintiffs did not suffer any injury as a result of the allegedly discriminatory practices of their employer because each named plaintiff had stipulated that he had not been discriminated against with respect to his initial hire and because the district court had found upon "abundant evidence" that the plaintiffs lacked the qualifications to be line drivers.

**5.** Subsequently, the decision of the Court of Appeals in *Scott* with respect to whether the

requirement of a cross appeal under F.R.C.P. 4(a)(3) is a rule of practice rather than procedure has been "seriously undermined" by Supreme Court decisions which strictly construe the rules of procedure and prescribed time limits. *See EF Operating Corp. v. American Bldgs.,* 993 F.2d 1046, 1049 n. 1 (3d Cir.1993) (citing *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)).

suits, involving classwide wrongs'" and that "'[common] questions of law or fact are typically present.'" *Falcon*, 457 U.S. at 157, 102 S.Ct. 2364 (quoting *Rodriguez*, 431 U.S. at 405, 97 S.Ct. 1891); *Krell*, 148 F.3d at 312. In addition, the Court noted that if an employer "used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a)." *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. 2364. Also, "significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." *Id.* In the same breath, however, the Court cautioned that "[t]he mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." *Id.* Thus, it is the way in which the discrimination manifests itself that may present common questions of fact and law, not mere membership in an identifiable class of race or national origin.

Because the issue of standing is before this Court and not whether class certification is proper pursuant to Rule 23, it is important to note that the *Falcon* Court did not hold that the plaintiffs lacked standing. It stands to reason that if the plaintiffs had lacked standing, the Court would have dismissed the claims for lack of standing, rather than reaching the merits of whether class certification was proper pursuant to Rule 23. In addition, I note that although the Supreme Court has clarified that an "across-the-board" class action will only meet the requirements of Rule 23 in exceptional circumstances, the requirements of Rule 23—be they relaxed or stringently applied—do not expand or contract the Court's jurisdiction under Article III of the Constitution. Indeed, it is inconceivable that the judicial gloss which relaxed the requirements of Rule 23 in "across-the-board" class actions somehow expanded the concept of standing to bring suit beyond what Article III allowed. Likewise, a stringent application of the Rule 23 requirements for class certification cannot serve to limit traditional notions of standing.

### 2. Standing To Raise "Across-the-board" Claims

Hygrade vigorously argues that none of the nine named plaintiffs are able to show an "injury in fact" caused by its hiring, promotion or termination practices and, therefore, they lack standing to assert these claims. *See Griffin v. Dugger*, 823 F.2d 1476, 1483–84 (11th Cir.1987) (plaintiffs lack standing to assert class action claims arising from employment practices with did not personally affect them); *Vuyanich v. Republic National Bank*, 723 F.2d 1195, 1200 (5th Cir.1984) (same), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988). In so doing, Hygrade relies heavily upon a case from the Eleventh Circuit. *Griffin*, 823 F.2d at 1483–84.

In *Griffin*, the Court of Appeals for the Eleventh Circuit held that a named plaintiff may bring claims on behalf of a class only if the plaintiff has suffered the precise injury that gave rise to that claim. 823 F.2d at 1483. It is not enough, according to the Eleventh Circuit, that a named plaintiff establish a case or controversy between himself and the defendant as to some claims. "Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id.* I believe that by focusing its standing analysis narrowly on each claim asserted, the Court of Appeals for Eleventh Circuit has effectively eliminated the possibility that a plaintiff, through discovery, could establish that "general policy of discrimination" existed

which presented common questions of fact and law such that a plaintiff not only has standing to bring an "across-the-board" class action but also that such an action would be certified under Rule 23. The Court of Appeals for the Eleventh Circuit held in the alternative, however, that even if the named plaintiff did have standing to litigate his right to work in an environment untainted by racial discrimination, he nevertheless failed to satisfy the requirements of Rule 23(a). *Id.* at 1484–87.

Although the Court of Appeals for the Eleventh Circuit has interpreted *Falcon* as a complete repudiation of the "across-the-board" class action and appears to have applied the dictates of *Falcon* to its analysis of standing by taking an extremely narrow view of the type of injury necessary to establish the requisite case or controversy sufficient to confer standing, I conclude that Hygrade's reliance upon *Griffin* is misplaced. As an initial matter, the Court of Appeals for the Third Circuit has stated in unequivocal terms that the "across-the-board" class action remains viable after *Falcon*. *Krell*, 148 F.3d at 312 (*Falcon* did not strike down "across-the-board" "classes *per se* " nor foreclose the possibility of class certification for "across-the-board" class action). Furthermore, the Court of Appeals for the Third Circuit has not analyzed the sufficiency of an injury for purposes of standing at the level of specificity demanded by the Court of Appeals for the Eleventh Circuit. *Id.* at 306–07, 309–12 (finding actual case or controversy existed even with respect to "other improper sales practices"); *Hassine v. Jeffes*, 846 F.2d 169, 175–180 (3d Cir.1988); *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir.1985).

In *Hassine*, a decision that post-dates both *Falcon* and *Griffin*, the Court of Appeals for the Third Circuit held that it was clear error for the district court to deny class certification where the named plaintiffs did not personally suffer all the alleged harms. 846 F.2d at 176 & n. 3. The district court's denial of class certification was predicated upon its view that the named plaintiffs were not the proper par-

ties to represent the class on the claims asserted. *Id.* at 175. Specifically, the district court held that the plaintiffs lacked standing to assert the cell condition of double-bunking and the provision of mental health care because none of the named plaintiffs had been double-bunked nor did they require mental health care. In addition, the court considered the other conditions raised—dampness and poor ventilation, inadequate security and unsanitary food service—only with regard to the evidence that the named plaintiffs submitted regarding their individual circumstances. *Id.*

The Court of Appeals noted first that the district court had misplaced the term standing in its decision that the plaintiffs were not proper parties to represent the class. The Court of Appeals explained that although standing and the adequacy of status to bring a class action appear related because both seek to measure whether the proper party is before the court, the issues are in fact separate concepts that should be evaluated separately. *Id.* at 175–76. The Court of Appeals reiterated that the issue of standing is a threshold issue and that the proper disposition of a case in which the putative class plaintiff lacks standing is to dismiss the case, not to deny class certification. Because the district court analyzed the issue under Rule 23 even though it held that the plaintiffs lacked standing, the Court of Appeals interpreted the decision of the district court as a denial of class status. In reversing the district court, the Court of Appeals held that the district court too narrowly interpreted the requisites of Rule 23 in denying class certification and, therefore, its denial was clearly erroneous. Nevertheless, the Court of Appeals also addressed the issue of standing, holding that to the extent that the district court's decision could be construed as dismissing claims for lack of standing, the order was in error. *Id.* at n. 3.

The Court of Appeals explained that "[s]tanding to assert a claim requires that

the plaintiff demonstrate personal interest in the outcome of the litigation; the plaintiff must show that 'he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " *Hassine,* 846 F.2d at 176 n. 3 (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)). The Court of Appeals reasoned that "the occurrence of the complainants' actual double-bunking was not necessary to their demonstration of the adequacy of their representation of the class on this claim." *Id.* at 177. Therefore, even though the named plaintiffs were not exposed to all the conditions complained of, the Court of Appeals was "persuaded that the complainants demonstrated sufficient interest in the outcome of each of the challenged conditions to survive dismissal of their claims on standing grounds." *Id.* at 176 n. 3. Thus, the Court of Appeals held that "the complainants present[ed] an adequate 'case or controversy,' and [were] entitled to adjudication of their claims." *Id.*

In another post-*Falcon* decision, the Court of Appeals for the Third Circuit similarly distinguished the issue of standing from requirements of Rule 23. *Goodman,* 777 F.2d at 122. In *Goodman,* the defendants argued that the district court erred in allowing the named plaintiffs, who asserted injury from specific discriminatory practices, to represent a broad class alleging violations beyond those of the named plaintiffs. The Court of Appeals initially observed that "contrary to the defendants' contentions, the issue here is one of compliance with the provisions of Rule 23, not one of Article III standing. Each named plaintiff has presented claims of injury to himself and has alleged facts which present a case or controversy under the constitution." *Id.* The Court then considered whether, under Rule 23, the named plaintiffs were the proper parties to bring claims of, among other things, dis-

criminatory discharge during the probationary period, although none of the named plaintiffs had been discharged during the probationary period. *Id.*

District courts in this Circuit have also addressed the issue of standing with respect to "across-the-board" claims in the post-*Rodriguez* and *Falcon* era. *See, e.g., Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657, (E.D.Pa.1980) (discussing standing in the aftermath of *Rodriguez* ); *Shannon v. Hess Oil Virgin Islands Corp.,* 96 F.R.D. 236 (D.Virgin Islands 1982). In *Bartelson,* then District Judge Edward Becker [6] analyzed whether a white woman who alleged sex discrimination had standing to bring claims of racial discrimination on behalf of putative class members. 86 F.R.D. at 665–66. In so doing, Judge Becker considered the impact of the Supreme Court's decision in *Rodriguez.* [7] Judge Becker recognized that, at first glance, it appeared that the plaintiff did not have standing to raise claims of race discrimination on behalf of various minority groups she sought to represent. Nonetheless, Judge Becker found that the plaintiff' allegation that working in an environment laden with racial discrimination injured her by depriving her of the benefits of interracial associations was sufficient to confer standing to represent putative class members complaining of racial discrimination. *Id.* at 665. Judge Becker reasoned that the term "person aggrieved" in Title VII manifested an intent by Congress to define standing as broadly as is permitted by Article III of the Constitution. *Id.; see also Anjelino v. New York Times Co.,* 200 F.3d 73, 90 (3d Cir.1999) (reiterating that the courts have "an obligation to avoid construing the standing doctrine in ways that undermine Congress' objective in enacting Title VII"). He further reasoned that the Supreme Court's decision in *Rodriguez* did not render a change in the scope of standing under Title VII because

---

**6.** Judge Becker was elevated to the Court of Appeals for the Third Circuit in 1982 and became the Chief Judge the Court of Appeals for the Third Circuit in 1998.

**7.** Although the Supreme Court's decision in *Falcon* has further elucidated how courts are to apply Rule 23, the decision in *Bartelson* with respect to standing remains undisturbed.

in *Rodriguez* "it was clear that the representatives had suffered no injury whatsoever on account of discrimination." *Id.* at 663–64 & n. 6.[8]

Finally, in *Shannon,* the court assessed the post-*Falcon* status of "across-the-board" class actions. 96 F.R.D. at 238–243. Again, as here, the defendant argued that the named plaintiffs did not plead those individual injuries which would confer standing to represent all members of the proposed class. In *Shannon,* the named plaintiffs were rejected employees and the class which they sought to represent included current and former employees. *Id.* at 237. The defendant argued that the named plaintiffs did not have standing to raise claims of discrimination in promotion or other workplace practices because the injuries suffered by the named plaintiffs as a result of discriminatory hiring were conceptually distinguishable from those suffered by the injuries suffered by employees as a result of discriminatory promotion and workplace practices.

The court took note that the *Falcon* decision unquestionably narrowed the scope of "across-the-board" Title VII class actions which attack discriminatory practices that result in differing injuries but are motivated by common policies. *Id.* at 242. However, notwithstanding the Supreme Court's statement that "[t]he mere

fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer," the *Shannon* Court recognized that *Falcon* did not "permanently remove[ ] the 'across-the-board' class action from the Title VII landscape." *Id.* at 242; *accord Krell,* 148 F.3d at 312. The *Shannon* Court reasoned that the Supreme Court did not disagree with the proposition that racial discrimination is by definition class discrimination. *Id.* The court further reasoned that in *Falcon* the Supreme Court envisioned at least some circumstances in which applicants and incumbent employees would share practically identical injuries and could therefore each meet the commonality and typicality requirements of Rule 23. The court thus determined that this recognition of circumstances provides the named plaintiff at least with a basis to complete class discovery, move for class certification and then proffer evidence, in accordance with Rule 23 that the allegedly sustained injuries in hiring and promotion occurred in the same fashion and that a class encompassing applicants, current employees and former employees is proper.

The decision in *Shannon* thus illustrates the second reason why I conclude that the

---

**8.** Judge Becker also discussed whether, in light of *Rodriguez* and Third Circuit precedent, an employee or former employee may represent an applicant class. Judge Becker reasoned that the mere fact that the plaintiff had been hired did not foreclose the possibility that she was discriminated against in during the hiring process. Indeed, he was unwilling to assume that someone who had been hired could not also be discriminated in hiring. In so doing, he distinguished *Rodriguez* and *Scott* where the named plaintiffs had conceded that they were not discriminated against in the hiring process. Although the decision in *Bartelson* pre-dated *Falcon* which sharpened the analysis under Rule 23, the reasoning remains sound insofar as *Falcon* did not foreclose the possibility that an employee or former employee could serve as a class representative for a class which includes applicants who were allegedly discriminated against in the hiring process. *See Richardson*

*v. Byrd,* 709 F.2d 1016, 1019–20 (5th Cir.) (post *Falcon* decision allowing employee to bring action on behalf of class that was discriminated against in hiring, transfer, promotion and job assignment), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Implicit in Judge Becker's analysis is the conclusion that because a current or former employee could suffer an injury from discriminatory hiring practices, the named plaintiff had standing to bring a claim involving discriminatory hiring practices. *See also Wajda v. Penn Mut. Life Ins. Co.,* 80 F.R.D. 303, 312 (E.D.Pa.1978) (post-*Rodriguez* decision in which court rejected notion that named plaintiff must be member of each subclass). In contrast, on a full record it was evident that the named plaintiffs in *Rodriguez* did not suffer *any* injury as a result of the employer's allegedly discriminatory hiring practices and thus, dismissal for lack of standing was appropriate.

defendant's reliance on *Griffin* is misplaced. Hygrade is moving for dismissal on the pleadings. Class discovery has not been completed and class certification has not yet been addressed by this Court. Thus, in contrast to *Griffin* where the Court of Appeals had a full record upon which to determine standing, here in a challenge to standing on the pleadings, the court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. at 559; *Anjelino,* 200 F.3d at 90. Secondly, as long as it is permissible under *Falcon* to permit class certification where the discrimination occurs in the "same general fashion," as a condition precedent, it must be that a plaintiff may have standing to bring such "across-the-board" claims. *Shannon v. Hess Oil Virgin Islands Corp.,* 100 F.R.D. 327, 335 (D.Vi.1983) ("*Shannon II*"). Thus, although standing is a threshold issue, when it is clear that a named plaintiff has presented a case or controversy between him or herself and his or her employer as to some claims and has alleged a factual nexus to widespread and pervasive discrimination, it is inappropriate to dismiss the claims for lack of standing at the pleading stage. *See Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177, 187 (4th Cir.1993) (it was not an abuse of discretion to conditionally certify class action and delay ruling on the issue of standing until discovery of the relevant underlying facts was complete). Indeed, I conclude that to grant the relief sought by Hygrade would be to commit the very same error for which the district court in *Falcon* was criticized, namely, the determination of class status without a sufficient evidentiary record. *Shannon,* 96 F.R.D. at 240.

It may be that the narrow exception articulated in *Falcon* may not afford much to the plaintiffs in their pursuit of class certification. It does, however, at least provide them with a basis upon which to complete class discovery, move for class certification and then proffer evidence, in accordance with Rule 23, that the injuries

allegedly sustained in hiring, promotion and discharge occurred in the same fashion and a class including these categories should be certified. *Shannon,* 96 F.R.D. at 242–43.

Here, the allegations set forth a number of specifically described employment practices, of which some provide the basis of the individual claims asserted by each of the named plaintiffs. Conversely, at least some of the class action allegations can be said to be "fairly encompassed" by the individual claims. In addition, the plaintiffs assert that decisions with respect to the challenged practices are highly subjective and concentrated in a small central group of people. I conclude that the amended complaint is not so lacking with respect to the challenged policies and acts of Hygrade as well as the concomitant injuries to the plaintiffs as to require dismissal of the class action claims prior to both the completion of class discovery and the formal request for class certification. *Shannon,* 96 F.R.D. at 239–240 ("the concern of the Court in *Falcon* was not with the lack of specificity of the pleadings, it was with the lack of specificity of the application for class certification").

I am thus persuaded that the plaintiffs have a sufficient interest in the outcome of the challenged employment practices to survive dismissal of their class claims on standing grounds. I therefore hold that the plaintiffs have presented an adequate case or controversy and have standing to raise the class claims. *Hassine,* 846 F.2d at 176 n. 3; *Shannon,* 96 F.R.D. at 236 ("the asserted lack of specificity of the individual claims asserted by each of the named plaintiffs provides no basis on which to dismiss any of the corresponding class claims prior to the completion of pre-certification discovery").

## B. Joinder

In an apparent attempt to bolster their "broad side" class attack on behalf of employees who have been terminated or denied promotions, plaintiffs also move to join additional parties. This tactic, in and of itself, is not objectionable. *Shannon II,*

100 F.R.D. at 334–35 (allowing intervention of plaintiff who alleged she was denied a promotion and man who alleged he was denied employment); *Hawkins v. Fulton County*, 95 F.R.D. 88, 91 (N.D.Ga.1982) (allowing joinder of plaintiffs who alleged discriminatory hiring practices).

Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court on motion by any party or of its own motion at any stage of the action on such terms as is just." The determination of a Rule 21 motion is wholly within the sound discretion of the trial judge. *Arch v. American Tobacco Co., Inc.*, 984 F.Supp. 830, 842 (E.D.Pa. 1997); *Hawkins*, 95 F.R.D. at 91.

Plaintiffs seek to join Edward E. Quarles and Jerry L. Posey as party-plaintiffs. Quarles was terminated on September 2, 1999, for allegedly having violated Hygrade's attendance policy. Quarles asserts that his termination was motivated by racial discrimination in the application of the attendance policy. He filed a grievance with the United Food & Commercial Workers Union ("UFCW"). No final decision has been made on the grievance. Quarles was also terminated in November of 1997. However, he filed a grievance with the UFCW and was reinstated with back pay.

Posey asserts that he was a victim of racial discrimination in connection with a promotion that he sought in September of 1996. Despite the fact that the position was posted and awarded to a more senior employee, Posey asserts that the circumstances of the posting and the actions of a supervisor in connection with the promotion give rise to an inference of race discrimination.

Hygrade makes a number of arguments as to why the court should not exercise its discretion to permit the joinder of these two plaintiffs. First, Hygrade argues that the two-year statute of limitations bars both Quarles and Posey from bringing a § 1981 claim. Hygrade further argues that the 1997 termination of Quarles fails to state a claim because he was reinstated with back pay he has not alleged a compensable harm. In addition, Hygrade argues that Quarles' 1999 claim for termination is not ripe for adjudication because he has not yet exhausted the UFCW grievance procedures. With respect to Posey, Hygrade argues that his claim for wrongful termination is procedurally defective because it did not occur within the Title VII liability period (measured from the filing of the earliest of the named plaintiffs' EEOC charge) and that he practically admitted that Hygrade has a non-pretextual business reason for not promoting him; namely, that a more senior employee was promoted pursuant to the company's collective bargaining agreement. Hygrade also objects on grounds that the proposed plaintiffs are asserting claims which the original plaintiffs do not have standing to bring and, therefore, the claims of Quarles and Posey are not similar such that they may be joined as additional parties.[9]

The plaintiffs respond that the single filing rule allows the plaintiffs to bring their claims even though they have not filed a separate EEOC charge.[10] They

---

**9.** In support of this argument, Hygrade argues that the named plaintiffs do not have standing to bring claims alleging discrimination in either its promotion or termination practices and therefore the claims of Quarles and Posey are necessarily different from and in addition to the claims for which the named plaintiffs properly have standing. Because I do not agree that named plaintiff do not have standing to assert these claims, see *supra* Section III, Part A, I also reject this argument.

**10.** Timely filing of an administrative charge with the EEOC is generally a precondition to

the initiation of a lawsuit under Title VII. 42 U.S.C. § 2000e–5(e); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, because the filing of an EEOC charge is not a mandatory prerequisite to the federal subject matter jurisdiction over a Title VII action, there are exceptions. Under the "single-filing rule" (or exception), a non-filing plaintiff may properly participate in a Title VII lawsuit provided that the original complainant's administrative charge gives the employer notice of the allegations of class discrimination. *Jackson v. Merck & Co., Inc.*, 1999 WL 962522

further argue that under a "continuous violation" theory, plaintiffs who are outside of the normal statute of limitations to recover for discrimination that occurred prior to the limitations period.[11]

■ I am not persuaded that the claims raised by Quarles and Posey, despite the difference in their status *vis a vis* the named plaintiffs, are beyond the scope of the original EEOC charge (so that some practical purpose would be served by requiring the filing of an EEOC charge). *See Shannon II*, 100 F.R.D. at 331–32. I nevertheless decline to exercise my discretion to permit the joinder of these plaintiffs. I am perplexed at the plaintiffs' choice to join Quarles and Posey as class representatives. Plaintiffs have made serious allegations of widespread and pervasive discrimination by Hygrade in practically every facet of its employment practices affecting hundreds of putative class members. Yet they now move to join additional plaintiffs whose circumstances, from a procedural as well as a factual standpoint, are problematic and open to attack on many fronts; not the least of which, ironically, is that they may not have suffered a compensable injury such to state a claim. Indeed, the plaintiffs fail to respond to Hygrade's argument that Quarles' 1999 termination is not ripe for adjudication or that he did not suffer a compensable injury from his 1997 termination. Moreover, whether the plaintiffs will be able to proceed under a continuous violation theory has yet to be factually disclosed and determined. To

(E.D.Pa. Oct.21, 1999); *see also Shannon II*, 100 F.R.D. at 331 (allowing two of three additional named plaintiffs "who each share an identity of interest with certain of the proposed classes in a way that the original plaintiffs do not" to intervene). The rationale behind the single-filing rule goes to the root of the requirement that plaintiffs file an administrative charge in the first instance. The reason for requiring that an administrative charge by filed with the EEOC is to promote administrative conciliation of claims rather than immediate resort to litigation. *Jackson*, 1999 WL 962522, at *5. If, however, it is impossible to reach a settlement with one discriminatee, it is reasonable to assume that the next one will be no more successful. The critical factor is the similarity of the claim being asserted by the party seeking to benefit from the single-filing rule to the claims asserted in the original EEOC charge. Where it can be fairly said no conciliatory purpose would be served by the filing of a separate EEOC charge, then it would be "wasteful, if not vain," to require separate filings with the EEOC. *Shannon II*, 100 F.R.D. at 331 (quoting *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir.1968)). Thus, a charge will be adequate to support joinder under the single filing rule " 'if it contains sufficient information to notify defendants of their potential liability and permit the EEOC to attempt informal conciliation of claims before a lawsuit is filed.' " *Jackson*, 1999 WL 962522, at *5 (quoting *Howlett v. Holiday Inns*, 49 F.3d 189, 195 (6th Cir.1995)).

11. Under this theory, a plaintiff "may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he [or she] can demonstrate that the act is part of an ongoing practice or pattern of discrimination." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995); *Bronze Shields, Inc. v. New Jersey Dep't of Civil Serv.*, 667 F.2d 1074, 1081 (3d Cir.1981); *Lanning v. SEPTA*, 176 F.R.D. 132, 149 (E.D.Pa.1997). In *Bronze Shields*, the Court of Appeals for the Third Circuit cited with approval a Senate Conference Committee report recognizing that "certain types of violations are continuing in nature," making it appropriate to "measure[ ] the running time of the required time period from the last occurrence of the discrimination and not from the first occurrence." 667 F.2d at 149. To establish that a claim falls within the continuing violation theory, the plaintiff must demonstrate that at least one act occurred within the filing period and that the discrimination is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *Id.* (citing *Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 91 (3d Cir.1981)). The Court of Appeals has identified several factors relevant to the determination of whether a plaintiff has demonstrated a continuing violation: (1) whether the violations constitute the same type of discrimination; (2) whether the alleged acts are recurring or more in the nature of an isolated work assignment or employment decision; (3) whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *West*, 45 F.3d at 755 n. 9.

join a plaintiff as a named representative, who is relying on a continuous violation theory to revive a procedurally stale claim for being wrongfully denied a promotion (not to mention the admitted circumstances surrounding Hygrade's reason for promoting someone else) and who may not be able to establish a predicate discriminatory act within the filing period, would not, on balance, further the interests of justice. Thus, I find that justice does not require the joining of these particular plaintiffs, Quarles and Posey, as named plaintiffs.

## C. Temporal Scope of Written Discovery Requests

The scope of discovery through interrogatories and requests for production of documents is particularly broad in a Title VII case. *Brown v. United Parcel Serv., Inc.,* 1982 U.S. Dist. LEXIS 16328, at *2 (N.D.Ohio Sept. 28, 1982); *Stevenson v. General Electric Co.,* 1978 WL 150, at *1 (S.D.Ohio Oct.4, 1978). The scope of discovery, however, is not without its limits and is "committed to the sound discretion of the trial court." *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 57 (E.D.Pa. 1979); *see also Regent Nat'l Bank v. Dealers Choice Automotive Planning,* 1998 WL 961377, at *6 (E.D.Pa. Dec.15, 1998). The party seeking the discovery has the burden of clearly showing the relevancy of the information sought. *McClain,* 85 F.R.D. at 57.

▮ In setting time limits, courts generally consider relevancy and the burdensomeness of furnishing the information requested by the plaintiff. *See, e.g., Regent Nat'l Bank,* 1998 WL 961377, at *6; *Clarke v. Mellon Bank,* 1993 WL 170950, at *2 (E.D.Pa. May 11, 1993). It is well established that discovery of conduct predating the liability period of a Title VII lawsuit is relevant and courts have commonly extended the scope of discovery to a reasonable number of years prior to the liability period of a Title VII lawsuit. *See, e.g., James v. Newspaper Agency Corp.,* 591 F.2d 579 (10th Cir.1979) (4 years); *General Ins. Co. v. EEOC,* 491 F.2d 133 (9th Cir.1974) (8 years held excessive);

*Lyoch v. Anheuser–Busch Co.,* 164 F.R.D. 62, 67 (E.D.Mo.1995) (4 years); *Stevenson,* 1978 WL 150, at *1 (noting emergence of a "five year rule"); *Milner v. Nat'l Sch. of Health Tech.,* 73 F.R.D. 628, 632 (E.D.Pa. 1977) (approximately 5 years prior to alleged violation). *McClain,* 85 F.R.D. at 63 (5 years); *Cormier v. PPG Indus.,* 452 F.Supp. 594 (W.D.La.1978) (5 years). Thus, the task of the trial court is to balance the clear relevance of the information against the burden on the defendant. *Clarke v. Mellon Bank,* 1993 WL 170950, at *2 (E.D.Pa. May 11, 1993).

▮ Plaintiffs have, in their written discovery, requested information dating back to January 1, 1990. Hygrade has agreed to produce documents dating back to March 1, 1994, but objects to what it describes as excessive and overly burdensome discovery with little or no demonstrated relevance. Plaintiffs counter by asserting that the information they seek is relevant to establishing a pattern and practice of discrimination in the workplace during the time plaintiffs were employed by Hygrade.

After weighing the relevancy of the information sought against the burden imposed upon defendants, I am persuaded that the request of the plaintiffs is overly broad and unduly burdensome. I therefore exercise my discretion to limit the temporal scope of the plaintiffs' discovery requests. However, I have also considered that the plaintiffs have alleged a continuing violation and that the scope, including the temporal scope, of discovery through interrogatories and requests for production of documents is particularly broad in Title VII cases. Thus, on balance, I am convinced that limiting the scope of discovery to a period of five years prior to the filing of the earliest EEOC charge (which was filed on May 4, 1998) is reasonable and is sufficient for purposes of gathering information to establish a violation of Title VII and/or a continuing violation. Accordingly, Hygrade shall respond

to all permissible discovery for the time period beginning May 1, 1993.

## IV. Conclusion

Based upon the foregoing, the motion of Hygrade to dismiss the hiring, promotion and termination claims of the plaintiffs for lack of standing, as well as its motion for a protective order, will be denied. The motion of the plaintiffs to join additional parties will also be denied. Finally, the motion of Hygrade to limit the temporal scope of the plaintiffs' written discovery will be granted.

### ORDER

**AND NOW**, on this 24th day of March, 2000, upon consideration of the motion of the defendant Hygrade Food Products ("Hygrade") to dismiss the hiring, promotion and termination claims of plaintiffs (Document No. 24) for lack of standing and the response and reply thereto, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion is **DENIED**. For the same reasons, the motion of Hygrade for a protective Order limiting the scope of plaintiffs written discovery related to plaintiffs' hiring, promotion and termination claims (Document No. 38), is also **DENIED**.

**IT IS FURTHER ORDERED** that the motion of plaintiffs to join additional parties (Document No. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that the motion of Hygrade for a protective Order limiting the temporal scope of the plaintiffs' written discovery (Document No. 37) is **GRANTED**. Consistent with the foregoing memorandum, Hygrade shall respond to all permissible discovery for the time period beginning May 1, 1993.

**IT IS FURTHER ORDERED** that the parties shall appear before the Court for a case management conference at **10:00 A.M.** on **Wednesday, April 5, 2000**, in Courtroom 11A, U.S. Courthouse, Philadelphia, Pennsylvania.

**IT IS FURTHER ORDERED** that, no later than 12:00 PM EST on **Tuesday, April 4, 2000**, the parties shall deliver to the Court in Chambers a draft agenda for the conference and a proposed scheduling Order.