*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0265P (6th Cir.)
File Name: 00a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RUDOLPH JONES, JR.; SUSAN
JONES; TANDY JONES
GILLILAND,
     *Plaintiffs-Appellants,*

     *v.*

CITY OF LAKELAND,
TENNESSEE, a Tennessee
Municipal Corporation,
     *Defendant-Appellee.*

No. 97-5917

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 96-03045—Jerome Turner, District Judge.

Argued: December 8, 1999

Decided and Filed: August 9, 2000

Before: MARTIN, Chief Judge; MERRITT,
KRUPANSKY, RYAN, BOGGS, NORRIS,
SUHRHEINRICH, SILER, BATCHELDER,
DAUGHTREY, MOORE, COLE, CLAY, and
GILMAN, Circuit Judges.

1

---

### COUNSEL

**ARGUED:** David A. McLaughlin, WARING COX, Memphis, Tennessee, for Appellants. Richard L. Winchester, Jr., THE WINCHESTER LAW FIRM, Memphis, Tennessee, for Appellee. **ON BRIEF:** David A. McLaughlin, Saul C. Belz, WARING COX, Memphis, Tennessee, for Appellants. Richard L. Winchester, Jr., THE WINCHESTER LAW FIRM, Memphis, Tennessee, for Appellee. Arthur H. Bryant, TRIAL LAWYERS FOR PUBLIC JUSTICE, Washington, D.C., Sohnia W. Hong, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Amici Curiae.

KRUPANSKY, J., delivered the opinion of the court, in which MARTIN, C. J., MERRITT, BOGGS, DAUGHTREY, MOORE, COLE, CLAY, and GILMAN, JJ., joined. NORRIS, J. (pp. 13-22), delivered a separate dissenting opinion, in which RYAN, SUHRHEINRICH, SILER, and BATCHELDER, JJ., joined.

---

### OPINION

---

KRUPANSKY, Circuit Judge. Pursuant to Fed. R. Civ. P. 35(a), a majority of the active judges of this court voted to rehear *en banc Jones v. City of Lakeland*, 175 F.3d 410 (6th Cir. 1999), an action which the United States District Court for the Western District of Tennessee had dismissed for lack of subject matter jurisdiction, and for failure of the plaintiffs' complaint to state a claim upon which relief could be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively.

Briefly summarized, this action was initiated by Rudolph Jones, Jr., Susan Jones, and Tandy Jones Gilliland (collectively "the plaintiffs"), as riparian land owners in fee simple along Oliver Creek. Oliver Creek is a natural water

relief in plaintiffs' complaint, nor do plaintiffs refer to declaratory relief when their briefs describe the relief sought in the complaint. When considering the potential mootness of a claim for declaratory relief, "[t]he question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A court should also consider whether the issues are capable of repetition, yet evading review. *Id.* The challenged activity in the present case, as asserted at oral argument, is no longer a continuing and brooding threat casting a substantial adverse effect upon the interests of plaintiffs. *Cf. id.* Plaintiffs have indicated that the dumping into Oliver Creek has ceased, so any permission for permit violations in the fourth order currently has no impact upon them. Furthermore, the threat of a recurrence of the disputed actions is so remote and speculative that there is no tangible prejudice to the existing interests of the parties. *Cf. id.* at 123.

## III.

I would affirm the order of the district court and, thus, I respectfully dissent. As discussed above, I would hold that the state was diligently prosecuting an action under a state law comparable to the Clean Water Act, barring plaintiffs' suit. In light of the majority's opinion, I would strongly encourage the district court, after obtaining additional information, to consider whether § 1319(g)(6) precludes the suit and whether the entire case has become moot.

course that traverses their real property within the City of Lakeland, Tennessee ("the City"), thereby according plaintiffs "standing" to commence a legal proceeding. Plaintiffs seek redress against the City for its ongoing practice of discharging contaminated sewage, sludge, and other toxic, noxious, and hazardous substances into Oliver Creek, in amounts exceeding those permitted by the National Pollutant Discharge Elimination System Permit (NPDES permit) issued to it by the Division of Water Pollution Control of the State of Tennessee Division of Conservation, the predecessor agency to the Tennessee Department of Environment and Conservation (TDEC), in violation of the Water Pollution Control Act ("the Clean Water Act"), 33 U.S.C. §§ 1254-1376, and the Tennessee Water Control Act ("the Tennessee Water Act"), Tenn. Code Ann. §§ 69-3-101 to 131. They charge that the City's ongoing practice is seriously imperiling human health and wildlife in, about, and along the said waterway.

The plaintiffs petitioned for "injunctive relief, civil penalties, and to abate the ongoing discharge of human, toxic, and other hazardous wastes and pollutants into waters, soil and ground waters, in violation of the City of Lakeland's National Pollution Discharge Elimination System ("NPDES") permit, and to compel the enforcement of the provisions of the Clean Water Act and the State Water Act."

The City responded by asserting that federal court jurisdiction over citizen enforcement actions is denied by the Clean Water Act if the Administrator of the Environmental Protection Agency, or a state, had already commenced and was diligently prosecuting an action to require compliance with a standard, limitation, or order of the Agency or the state. The plaintiffs countered by stating that their complaint facially impugned the City's action of issuing, but not effectively enforcing, a series of compliance orders while concurrently permitting the City to continue to discharge increasing amounts of impermissible toxic, noxious, hazardous, and health-threatening sewage and other raw waste into Oliver Creek during the ten years preceding their legal

action; and that the City's demonstrated lax enforcement did not constitute "diligent prosecution" mandated by the Clean Water Act that would preclude their suit.

Appellate review of a Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) motions is *de novo*. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999).

In the instant case, the trial court correctly observed that the City's motion did not question the accuracy of the plaintiffs' pleaded facts. Rather, the City argued that the alleged facts were facially insufficient to support subject matter jurisdiction because of the limiting preclusions of 33 U.S.C. §§ 1365(a)&(b) and 1319(g)(6)(A). The trial court continued its reasoning by noting that 33 U.S.C. § 1365(a), the enabling legislation which authorized citizens' suits, directs that:

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf –

(1)  against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B)an order issued by the Administrator or a State with respect to such a standard or limitation … .

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

It appears from the record that the parties and the trial court thereafter proceeded to consider the sufficiency of the complaint within the limitation placed upon citizen

does not suffice to moot a case." *Id.* at 700. The Court also noted that civil penalties "may serve, as an alternative to an injunction, to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation." *Id.* Looking at the specific circumstances, the Court indicated that the case might be moot either because of the facility closure or the substantial compliance with permit requirements, but remanded the matter because the effect of both the closure and compliance was a disputed factual matter. *Id.* at 711. The Court set out the standard for determining whether a case has been mooted by a defendant's voluntary conduct:

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Ibid.*

*Id.* at 708.

In the present case, the completion of the new facility on a different river and the cessation of all dumping into Oliver Creek seems to have made it "absolutely clear" that the violations alleged in the complaint could not reasonably be expected to recur. Because the parties only mentioned the completion of the new facility after prompting at oral argument, this court does not have all the details surrounding the matter, nor has this issue been aired in the district court. Therefore, I would encourage the district court to address the question of mootness on remand. *See id.* at 711.

At oral argument, counsel for plaintiffs also suggested that the case would not be moot because plaintiffs sought declaratory relief. Specifically, counsel stated that plaintiffs wanted declaratory relief that the fourth order, by its terms, allows the city to continue violations of its NPDES permit. I have been unable to locate a request for such declaratory

procedures for obtaining those goals. The "overall scheme of the two acts is aimed at correcting the same violations, thereby achieving the same goals," and therefore, because plaintiffs seek to remedy a situation "already in the process of being remedied by [the TDEC]," I would hold that the TWQCA is comparable to 33 U.S.C.A. § 1319(g) of the Clean Water Act. *See North & South Rivers*, 949 F.2d at 556.

Because the TWQCA is a state law comparable to § 1319(g), and the state is diligently prosecuting an action against the city under this state law, I would hold that § 1319(g)(6)(A)(ii) bars plaintiffs' action. However, in light of the majority's disagreement with my conclusion, I would encourage the district court on remand to consider TDEC's evidence regarding comparability. I would also note that the majority's conclusion regarding diligent prosecution is based upon the standard of review applied to a facial challenge to subject matter jurisdiction; an evidentiary hearing in the district court may reveal further information supporting the assertion that TDEC was diligently prosecuting the cause.

## II.

I also believe that this case may now be moot. At oral argument, counsel for both sides agreed that currently no effluent is being dumped into Oliver Creek. A new wastewater treatment facility, located on a different river, was opened in 1997. Counsel for plaintiffs conceded that the claims for injunctive relief are moot. A recent decision by the Supreme Court raises a serious question as to whether plaintiffs' request for civil penalties is also moot.

In *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 120 S. Ct. 693 (2000), the Supreme Court examined a citizen suit brought under the Clean Water Act. The question before the Court was whether a claim for civil penalties had to be dismissed as moot when the defendant, after commencement of the litigation, had come into compliance with its NPDES permit and later closed the facility at issue. The Court held that "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily

enforcement actions by 33 U.S.C. § 1365(b), which provides, in part, that:

> No action may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

and/or 33 U.S.C. § 1319(g)(6)(A) which directs, in pertinent parts, that no action for the assessment of civil penalties can be commenced for a violation:

> (ii) with respect to which a State has commenced and *is diligently prosecuting an action under a State law comparable to this subsection* … .

(Emphasis added).

Having correctly postured the case, the district court's analysis went astray in arriving at its disposition by misinterpreting applicable law and misconceiving legal precedent.

Initially, it elected to consider the plaintiffs' complaint and the defendant's motion to dismiss only within the context of 33 U.S.C. 1365(b), which required that the Administrator or State had commenced and was diligently prosecuting an action for compliance with a limitation, standard or order of the TDEC *in a **court** of the United States, or a State*.

In an effort to satisfy the dictates of the statute, the trial court committed reversible error by according the TDEC, a state *administrative agency* charged by the state legislature with supervising water quality, the status of *a court* of the United States or a State.

In addressing this issue, the Second Circuit, in a well-reasoned decision in *Friends of the Earth v. Consolidated Rail Corp*, 768 F.2d 57 (2d Cir. 1985), ruled that:

To interpret section 505(b)(1)(B) [33 U.S.C. § 1365(b)] to include administrative as well as judicial proceedings is in our view contrary to both the plain language of a statute and congressional intent. Congress has frequently demonstrated its ability to explicitly provide that either an administrative proceeding or a court action will preclude citizen suits. *See, e.g.,* Toxic Substances Control Act, 15 U.S.C. § 2619(b)(1)(B) (1982); Endangered Species Act, 16 U.S.C. § 1540(g)(2) (1982); Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1415(g)(2) (1982); Hazardous and Solid Waste Amendments of 1984, Pub. L No. 98-616, § 401(d), 98 Stat. 3221, 3269-70 (amending Solid Waste Disposal Act, 42 U.S.C. § 6972(b) (1982)). Had Congress wished to impose this broader prohibition on citizen suits under the Clean Water Act, it could easily have done so. It did not.

*Id.* at 63.

The court in *Friends* went on to explain and decide that:

It is a "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S. Ct. 2051, 2056, 64 L. Ed.2d 766 (1980); *United States v. Turkette,* 452 U.S. 576, 580, 101 S. Ct. 2524, 2527, 69 L. Ed.2d 246 (1981). Moreover, when a court finds the language of a statute to be clear and unambiguous, "judicial inquiry is complete, except in 'rare and exceptional circumstances.'" *Garcia v. United States*, ___ U.S. ___, ___, 105 S. Ct. 479, 483, 83 L. Ed.2d 472 (1984) (quoting *TVA v. Hill,* 437 U.S. 153, 187 n. 22, 98 S. Ct. 2279, 2298 n. 22, 57 L. Ed.2d 117 n. 22 (1978)); *Ex Parte Collett*, 337 U.S. 55, 61 S. Ct. 944, 947, 93 L. Ed. 1207 (1949); *Gramaglia v. United States*, 766 F.2d 88, 92 (2d Cir. 1985); *Hamker v. Diamond*

thereby giving interested parties a meaningful opportunity to participate that is comparable to the Clean Water Act.[1]

I also note the similarities in the administrative penalties articulated in the TWQCA and the Clean Water Act. The Clean Water Act provides for threshold penalties of up to $10,000 per violation or $10,000 for each day during which a violation continues, depending upon whether the penalty is a class I or class II civil penalty. 33 U.S.C.A. § 1319(g)(2). In assessing such a penalty, the Administrator or Secretary is authorized to take into account such factors as "the nature, circumstances, extent and gravity of the violation, or violations, and, with respect to the violator, ability to pay, any prior history of such violations, the degree of culpability, economic benefit or savings (if any) resulting from the violation, and such other matters as justice may require." 33 U.S.C.A. § 1319(g)(3). Similarly, the TWQCA allows for a civil penalty of up to $10,000 per day for each day during which a violation of state law occurs. Tenn. Code Ann. § 69-3-115(a)(1). In assessing this penalty, the commissioner is authorized to consider factors similar to those enumerated in the Clean Water Act. *See* Tenn. Code Ann. § 69-3-115(a)(3). The TWQCA also allows for a fine of $25,000 and possible incarceration against anyone intentionally failing to comply with state law, falsifying information submitted to the state, or polluting the waters of the state. Tenn. Code Ann. § 69-3-115(c).

In summary, the overall goals of the Clean Water Act and the TWQCA are comparable, as are the enforcement

---

[1] Amicus TDEC also points out that the Environmental Protection Agency ("EPA") approved of Tennessee's NPDES program in 1977. *See* Revision of the Tennessee National Pollutant Discharge Elimination System (NPDES) Program to Issue General Permits, 56 Fed. Reg. 21,376 (1991) (noting that Tennessee's NPDES permit program was approved on December 28, 1977). I find the EPA approval instructive because, in order to approve a state's NPDES permit program, the EPA must determine that the state's program has legal authority to implement certain provisions, including provisions allowing opportunities for public notice and comment. *See* 40 C.F.R. 123.25(a) (1999).

requires that the public be given notice of regular and special meetings, which would include meetings on orders and assessments. *See* Tenn. Code Ann. § 8-44-103 (1993) (providing for public notice of regular and special meetings); § 69-3-104(d) (Supp. 1999) (authorizing regular and special meetings of the Board); § 69-3-105(f), (i) (Supp. 1999) (setting out Board mandate and authority for hearing appeals of orders, assessments, and permit revocations or modifications; affirming, modifying, or revoking such actions or orders of the commissioner; and reviewing permits and variances).

While the majority may not be enamored of the public notice and intervention opportunities provided by the TWQCA and related Tennessee statutes, the majority opinion fails to point to opportunities provided in the Clean Water Act that are not comparably provided under Tennessee law. The majority takes issue with specific actions in this case, pointing out that the four orders issued were not filed in the chancery court. The question of comparability, however, addresses whether the state and federal statutes are sufficiently similar. In this case, the main question is whether the statutes have comparable provisions for public notice and intervention. The factual circumstances of this case are irrelevant to such a determination. To the extent the four orders were final, it might have been error for those orders not to have been filed in chancery court. Such an error, however, does not render the TWQCA incomparable to the Clean Water Act.

I would reiterate that a state law need not contain precisely the same public notice and comment provisions as those found in the Clean Water Act. *See Arkansas Wildlife*, 29 F.3d at 381. As can be seen from the above discussion, Tennessee law does mandate certain notice to the public and opportunities for non-parties to file complaints and intervene,

*Shamrock Chemical Co.*, 756 F.2d 392, 395 (5th Cir. 1985). "[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language." *Garcia*, ___ U.S. at ___, 105 S. Ct. at 482-83.

*Id.* at 62-63.

Accordingly, this court adopts the reasoning of the Second Circuit, as expressed in *Friends of the Earth v. Consolidated Rail Corp.*, and concludes that the plain and unambiguous language of 33 U.S.C. § 1365(a) precludes a citizen's suit only if the Administrator of the EPA or a State is diligently prosecuting an enforcement action in a court of the United States, or a State. Thus, since neither the State's Water Quality Control Board, nor the TDEC, rise to the level of a Federal or State court, the instant plaintiffs' citizen's suit is not precluded by 33 U.S.C. § 1365(b).

Moreover, crediting as true the pleaded assertions in the complaint and construing them most favorably on behalf of the plaintiffs, as directed by the Supreme Court, this review concludes that TDEC's administrative enforcement action over a ten- year period was inadequate to address plaintiffs' concerns. During this inordinately long period of administrative enforcement, TDEC: (1) permitted the City to discharge impermissible volumes of contaminated raw human sewage, sludge, and other toxic, noxious substances into Oliver Creek on an ongoing basis thereby creating significant risks to human health and wildlife in, about, and along the water course; (2) permitted the City, by an Order dated August 21, 1996, to increase the impermissible volume of contaminated raw waste water discharging into the stabilizing lagoon that feeds Oliver Creek by allowing the City to continue to make connections and/or line extensions to its wastewater collection system; (3) waived countless NPDES violation notices; (4) extended and waived the compliance deadlines of three, possibly four, of its sweetheart consent

orders with the City;[1] and (5) imposed nominal token penalties in lieu of punitive compliance incentive penalties of $10,000.00 per day authorized by the Clean Water Act,[2] all of which conduct contradicted a level of "diligent prosecution" demanded by 33 U.S.C. § 1365(b), especially in light of the City's ongoing impermissible pollution of Oliver Creek as late as September 30, 1996, the date this action was

---

[1] The administrative jurisdiction of TDEC over the impermissible pollution of Oliver Creek by the City, in violation of the Clean Water Act and the Tennessee Water Control Act, has the indicia of pretextual enforcement calculated to perpetuate TDEC's ten-year oversight of the City's ongoing impermissible pollution of the watercourse, which has afforded the parties, the City, and TDEC, protection from third-party citizen-initiated litigation, evidenced by the listed substantively similar unenforced consent orders between the parties extending compliance deadlines under the guise of "diligent prosecution":

1. Consent Order and Assessment dated May 3, 1991 with a compliance deadline of January 1, 1993, as replaced and modified by
2. Consent Order and Assessment dated July 8, 1993 with a compliance date of December 15, 1993, as replaced and modified by
3. Consent Order and Assessment dated November 18, 1994 with a compliance date of March 1, 1996, as replaced and modified by
4. Consent Order and Assessment dated August 26, 1996, with a compliance date of July 1, 1997.

[2] Exhibits attached to the complaint disclose that, during ten years of non-compliance, the TDEC had levied approximately $50,000.00 in various token increments of which only $18,000.00 had been collected. In contrast, approximately $1,940,000.00 in penalties could have been levied against the City for violations that occurred during the 104 days between March 29 and November 30, 1996.

---

comparability requirement may be satisfied so long as the state law contains comparable penalty provisions which the state is authorized to enforce, has the same overall enforcement goals as the federal CWA, provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process, and adequately safeguards their legitimate substantive interests. Under those circumstances, the state statute should be presumed comparable unless the facts of the specific case demonstrate that the state denied an interested party a meaningful opportunity to participate in the administrative enforcement process.

*Arkansas Wildlife*, 29 F.3d at 381-82 (citation omitted). I agree that these are the relevant considerations in evaluating the comparability of the Clean Water Act and a state clean water law.

The TWQCA provides interested citizens a "meaningful opportunity to participate" in the enforcement process. Any person may file a signed complaint against anyone allegedly violating the provisions of the TWQCA. Tenn. Code Ann. § 69-3-118(a)(1) (1995). The TDEC must then act upon the complaint unless it finds the complaint to be "duplicitous or frivolous." *Id.* A complainant may appeal the resulting determination by the TDEC or the TDEC's failure to act to the Water Quality Control Board ("Board"). Moreover, when any order or assessment by the TDEC becomes final, even though an administrative action by the TDEC is ongoing, Tennessee law allows forty-five days within which any citizen may intervene, after making an appropriate showing, before the chancery court enters final judgment on the order or assessment. *See* Tenn. Code Ann. § 69-3-115(e)(2). Likewise, interested parties may intervene in hearings before the Board upon making the requisite showing. *See* Tenn. Code Ann. § 69-3-110(a) (1995) (indicating that Board hearings "shall be conducted in accordance with [Tenn. Code Ann. §§ 4-5-301 to 324]"); Tenn. Code Ann. § 4-5-310 (1991) (setting out conditions for granting petitions for intervention). Furthermore, Tennessee's Open Meetings Act

one-for-one equivalency would be inappropriate when comparing § 1319(g) with a state counterpart. The restrictions on citizen suits found in §§ 1365(b) and 1319(g)(6) are intended to prevent the filing of citizen actions that would be duplicative of ongoing state or federal agency action. The statutes also prevent federal courts from imposing inconsistent obligations upon an offending party as a result of multiple independent actions by citizens, state agencies, and/or federal agencies. The Tennessee Water Quality Control Act ("TWQCA") and § 1319(g) cannot be correctly compared without applying the foregoing principles.

Having reviewed the provisions of both § 1319(g) and the TWQCA, I conclude that the two are "comparable" as the meaning of that term is contemplated in § 1319(g)(6). The overarching goals of the Clean Water Act and the TWQCA are the same: each seeks to abate existing water pollution, reclaim polluted waters, prevent future pollution, and plan for the future use of water resources. 33 U.S.C.A. § 1251 (West 1986 & Supp. 1999); Tenn. Code Ann. § 69-3-102(b) (1995). Section 1319(g) is concerned with the administrative penalties that attend violation of the Clean Water Act. *See* 33 U.S.C.A. § 1319(g). Section 69-3-115 of the TWQCA likewise lists punishable violations and procedures for punishment. *See* Tenn. Code Ann. § 69-3-115 (1995). The conduct proscribed by both is remarkably similar.

In addition to the similarities in proscribed conduct, the enforcement schemes of the Clean Water Act and the TWQCA share significant commonalities. The Court of Appeals for the Eighth Circuit has articulated some important considerations for determining the comparability of a state clean water law and § 1319(g) of the Clean Water Act:

The common thread running through [cases addressing the comparability of the CWA and state laws] is a finding that the overall regulatory scheme affords significant citizen participation, even if the state law does not contain precisely the same public notice and comment provisions as those found in the federal CWA. . . . [T]he

---

commenced.[3] The trial court's resolution to the contrary is not convincing and clearly erroneous, and is REVERSED.

As directed by 33 U.S.C. § 1365(a), this review next proceeds to determine if 33 U.S.C. § 1319(g)(A), which reads in pertinent parts as follows, precludes the plaintiffs' action:

[A]ny violation . . .

(ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection . . . shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

The defendant has asserted, and plaintiffs have denied, that the enforcement provisions of the TWQCA are comparable to

---

[3]The defense has referenced and relies heavily upon the fourth consent order between the City and TDEC dated August 26, 1996. It argues that this Order reflects TDEC's good faith intention and commitment to "diligently prosecute" the City's ongoing pollution violations.

Examination of the Order discloses that it is a virtual substantive facsimile of three previous Consent Orders between the parties wherein the City has admitted its ongoing impermissible pollution of Oliver Creek, and TDEC has assessed penalties and imposed abatement compliance deadlines, which assessments have been wholly or partially waived, and compliance deadlines have been extended by each successive Order. Like its three predecessors, the fourth Order has incorporated the previously included escape clause permitting the City to seek extensions of the compliance deadline mandated by the Consent Decree, and partial or total abatement of any monetary assessments that may have accrued as a result of the City's non-compliance. Defendant counsel's representation that the August 26, 1996 Consent Order is a good faith indication of anticipated future "diligent prosecution" is less than persuasive in light of a demonstrated ten-year history of permitted ongoing violations. Although the complaint asserts that the impermissible pollution of Oliver Creek was ongoing on September 30, 1996, the date this suit was filed, neither the pleadings, the briefs, the joint appendix, nor the arguments of counsel disclose what has occurred since that time.

those of the Federal Clean Water Act. Defendant posits that interested and/or adversely affected citizens are afforded a meaningful opportunity to participate in enforcement actions for purported violations of the TWQCA, or enforcement activity pursued by the TDEC, by invoking administrative relief available pursuant to the Tennessee Open Meeting Act, Tenn. Code Ann. § 8-4-101 to 201 (1977); or before the Water Quality Board, Tenn. Code Ann. § 69-3-115(e)(2).

Recognizing that both the State and Federal acts are compatible in some respects, the court, in the instant case, must decide if the overall State regulatory scheme affords interested and/or adversely affected citizens the safeguard of a meaningful opportunity to participate in the administrative enforcement process.

An examination of the TWQCA reflects that it requires no public notice of hearings, nor does it require the State to extend third parties an opportunity to initiate or join mandatory controversial issues seeking justiciable resolution such as enforcement proceedings and consent orders similar to those unilaterally considered and approved by the TDEC. Nor does the Tennessee Open Meetings Act, Tenn. Code Ann. § 8-4-101 to 201 (1977), mandate procedures for public participation in an ongoing enforcement prosecution under the TWQCA by TDEC or before the Water Quality Control Board. Thus, TDEC attempts to artfully invoke the protection of a "diligent prosecution" of an ongoing enforcement action while its unilateral discretionary authority permits it to declare citizen or public participation "duplicitous or frivolous," Tenn. Code Ann. § 69-3-118-(a)(1), so that the plaintiffs and other similarly situated citizens can be frozen out of commencing an original action, or intervening in an ongoing State enforcement action.

The only window for redress available to the plaintiffs in the instant case, and others similarly situated, occurs in an ongoing administrative action by the TDEC before the Water Quality Control Board when Tennessee law requires that, if a consent judgment is entered between the TDEC and an

against the city. The record before this court further reflects that the city attempted to comply with the orders and that the TDEC extended deadlines in response to practical difficulties the city encountered in reaching full compliance. The fourth order required the city to pay a fine and provided for additional fines should the city fail to meet the full requirements of the order. The district court recognized that an enforcing agency must be accorded the latitude to respond to circumstances that delay remedial projects and warrant reassessment of compliance target dates. In using the term "diligently prosecuting," Congress did not contemplate the rigidity plaintiffs would have us visit upon the Clean Water Act's enforcement scheme. It is clear that the TDEC is attempting to remedy the specific problems plaintiffs cite in their complaint. Accordingly, I am unable to say that the district court erred when it concluded that the TDEC's continued enforcement represents diligent prosecution as contemplated by the statute.

## B.    Comparability

I begin my analysis of comparability by noting the fundamental principle that citizen suits are "meant to supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987). As a result, the "'great volume of enforcement actions [are intended to] be brought by the State,'" and thus "citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'" *Id.* (quoting S. Rep. No. 92-414, at 64 (1971), *reprinted in* 2 A LEGISLATIVE HISTORY OF THE WATER POLLUTION CONTROL ACT AMENDMENTS OF 1972, at 1482 (1973)). When a state agency "has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored." *North & South Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 557 (1st Cir. 1991). In view of the secondary nature of citizen suits and the deference afforded state agencies by Congress and other courts, a narrow, exacting interpretation of the word "comparable" that requires

based upon the restriction contained in § 1365(b). Because the district court erroneously relied upon § 1365(b), I am left to determine whether § 1319(g)(6) does in fact bar plaintiffs' action. Specifically, I must determine: (1) whether the Tennessee Department of Environment and Conservation ("TDEC") is diligently prosecuting an action against the city; and (2) whether the TDEC is prosecuting that action under a state law comparable to § 1319(g). It is important to note that § 1319(g)(6) does not require that enforcement be undertaken in a court. Section 1319(g)(6)(A)(ii) precludes citizen suits that would be "duplicative of an 'administrative penalty action.'" *See Citizens for a Better Env't v. Union Oil Co.*, 83 F.3d 1111, 1115 (9th Cir. 1996) (quoting *Washington Pub. Interest Research Group v. Pendleton Woolen Mills,* 11 F.3d 883, 885 (9th Cir. 1993)).

*A.   Diligent Prosecution*

In their complaint, plaintiffs alleged that the "TDEC failed to undertake any action to prevent or abate the continuing current discharge by [the city] into Oliver Creek from the existing stabilization lagoon and thereby allowed the wrongful discharge to increase." Plaintiffs' primary contention appears to be not that the TDEC is doing nothing but, rather, that its prosecution cannot be diligent if it continues to allow the city to dump impermissible amounts of waste into Oliver Creek and if its attempts to remedy the problem are limited to entering a series of ineffective administrative orders.

I cannot agree with plaintiffs' view of the record. In concluding that the state was in fact diligently prosecuting an action against the city, the district court noted that four orders had been entered between the city (or its predecessor in interest) and the TDEC, the last of which was on August 26, 1996, one month prior to plaintiffs' filing of this action. This latest order required that the city be in full compliance with its National Pollutant Discharge Elimination System ("NPDES") permit by July 1, 1997. The court cited this fourth order as an example of the state's diligent prosecution of its action

offending party and filed with the chancery court, the court shall withhold final judgment for forty-five days during which adversely affected parties shall be permitted to intervene. Tenn. Code Ann. § 69-3-115(e)(2). *See Jones*, 175 F.3d at 416.[4] Needless to say, the language of Tennessee Code § 69-3-115(e)(2) presupposes that a final order of the TDEC has been filed with the chancery court as a condition precedent to invoking its jurisdiction. It is apparent from Tennessee public records attached to the complaint and the Affidavit of David A. McLaughlin, an attorney for the plaintiffs, *not one of the four orders* issued by the TDEC and/or Water Quality Control Board, relied upon by the district court in arriving at its decision, *were filed with the chancery court by the State or any of its agencies during the ten or more years of this ongoing enforcement proceeding.* Consequently, the plaintiffs and other similarly affected citizens are, at the discretion of the TDEC, denied access to both the courts and to a meaningful opportunity to participate at significant stages of the administrative decision-making process, to adequately safeguard their legitimate interests as mandated by the Clean Water Act. Accordingly, the TWQCA and related Tennessee statutes are not comparable to 33 U.S.C. § 1365(a)(1)(b) and/or 33 U.S.C. § 1319(g)(6).

Upon the record available to the court, including the complaint and other pleadings, the joint appendix, the briefs of the parties, and the arguments of counsel, it is the decision of the *en banc* court that the plaintiffs' complaint facially states a cognizable claim under which relief may be granted; that Fed. R. Civ. P. 12(b)(1) and 12(b)(6) do not bar the plaintiffs' action; and, accordingly, the defendant's Rule

---

[4] "[W]hen an action is being overseen by the [Water Quality Control] Board rather than the TDEC, Tennessee's Open Meetings Act requires that the public be allowed to attend *proceedings,* including meetings over final actions." Tenn. Code Ann. § 8-44-101-201 (1997) (emphasis added). Compliance with said sections is also vested in the chancery courts. Public attendance is, however, limited to *commentary*, without an opportunity to present issues in an adversary fashion for mandatory resolution. These sections provide no justiciable relief for these plaintiffs.

12(b)(1) and 12(b)(6) motions are DISMISSED, and this case is REMANDED to the trial court for further proceeding and disposition not inconsistent with this decision.[5]

---

[5]The record of these proceedings as presently constituted does not disclose any evidence that the City of Lakeland has discontinued its discharge of impermissible volumes of contaminated raw human sewage and other toxic and hazardous substances into Oliver Creek.

The dissent is correct in observing that during oral argument, legal counsel for the adversary parties alluded, in vague general terms, to the construction and operation of a waste water treatment facility located on a different water course and which became operational sometime during 1997. Counsel for the Plaintiffs questioned the capability of the facility to accommodate the volume of hazardous effluent discharged into Oliver Creek over a long term.

Accordingly, the district court is ordered upon remand to explore with greater specificity the issue of mootness.

---

**DISSENT**

---

ALAN E. NORRIS, Circuit Judge, dissenting. While I agree that 33 U.S.C.A. § 1365 does not apply because the administrative proceedings at issue in this case are not actions taken in court, I would nevertheless affirm the district court's decision because the court lacked subject matter jurisdiction under 33 U.S.C.A. § 1319(g)(6). Furthermore, I believe there is a serious question as to whether this case has become moot. Therefore, I respectfully dissent.

**I.**

In my opinion, § 1319(g)(6) prevents the district court from having subject matter jurisdiction over this citizen lawsuit seeking to enforce provisions of the federal Clean Water Act. Section 1319(g)(6)(A) provides, in relevant part, that

[A]ny violation . . .

 (ii) with respect to which a State has commenced and is diligently prosecuting an  action under a State law comparable to this subsection . . .

 shall not be the subject of a civil penalty action under subsection (d) of this section  or section 1321(b) of this title or section 1365 of this title.

33 U.S.C.A. § 1319(g)(6)(A) (West Supp. 1999). Thus, once a state has commenced and is diligently prosecuting an action under a state law that is comparable to § 1319(g), a citizen suit is barred. *Id.; see also Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 514, 516 (9th Cir. 1996); *Arkansas Wildlife Fed'n v. ICI Americas, Inc.*, 29 F.3d 376, 379 (8th Cir. 1994).

The district court declined to address the effect of § 1319(g)(6) because the city had not relied upon it and because the court concluded that the motion could be decided