# United States Court of Appeals
## For the First Circuit

No. 00-1004

DYNAMIC IMAGE TECHNOLOGIES, INC., ET AL.,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Selya, Boudin and Lipez,

Circuit Judges.

Johnny Rivera and Ivan Dominguez on brief for appellants.
David W. Ogden, Acting Assistant Attorney General, Guillermo Gil, United States Attorney, Robert S. Greenspan and E. Roy Hawkens, Attorneys, Appellate Staff, United States Dep't of Justice, on brief for appellee.

August 4, 2000

**SELYA, Circuit Judge.** Dynamic Image Technologies, Inc. (DIT) and Rafael Vega (DIT's principal) sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680. The district court gave their claims careful consideration, but found them wanting. See Dynamic Image Technologies, Inc. v. United States, 68 F. Supp. 2d 113 (D.P.R. 1999) (Dynamic II); Dynamic Image Technologies, Inc. v. United States, 18 F. Supp. 2d 146 (D.P.R. 1998) (Dynamic I). DIT and Vega appeal. We affirm.

## I. BACKGROUND

We take the plaintiffs' version of the facts, consistent with record support. See Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (elucidating summary judgment standard). In the interests of fairness, however, we report that the government disputes many of the facts.

In mid-1991, the United States Postal Service (USPS) announced a set of requirements for obtaining bulk mail pre-sort discounts. This innovation opened a window of opportunity for direct-mail houses and other firms offering mail-processing services. In an attempt to pass through this window, DIT invested appreciable time and money in the development of a software system capable of effecting compliance with the new requirements. In July 1995, the USPS granted its seal of

-3-

approval — termed, in an epitomical example of bureaucratic doublespeak, a coding accuracy support system quality certification (CASSQC) — to DIT's newly-developed software.

Later that month, the USPS hosted a trade show in San Juan to enable vendors to present mail-processing products and systems to prospective customers. The USPS's customer service manager, Luis Peña, informed those attending the show that no one in Puerto Rico had obtained the certification necessary for pre-sort clearance. When Vega objected to this misstatement, Peña ordered his forcible removal from the premises. Following this episode, DIT claims to have suffered a severe erosion of its customer base.

A USPS representative subsequently informed the plaintiffs that a new (and different) test would be administered. This test bore tangentially, if at all, on the efficacy of techniques intended to comply with the announced pre-sort requirements, and employed criteria that departed radically from the CASSQC standard. Moreover, USPS employees continued to inform DIT's actual and potential customers that it lacked the proper credentials to obtain pre-sort discounts.

In response, the plaintiffs filed an administrative claim with the USPS alleging negligent misrepresentation, libel, slander, intentional interference with contractual relations,

and discrimination under 42 U.S.C. § 1983. They averred, at some length, that USPS personnel made false and misleading statements anent DIT's certification status, disrupted advantageous economic relations between DIT and its customers, drove DIT out of business, and, in the bargain, discriminated against Vega. Notably, however, the document — which prayed for $5,000,000 in damages — did not mention the incident involving Vega's ejection from the trade show.

When the matter was not resolved administratively within the obligatory six-month waiting period, the plaintiffs brought suit in the United States District Court for the District of Puerto Rico. See 28 U.S.C. § 2675(a). Their complaint mirrored their administrative claim and did not refer to Vega's confrontation with Peña. The United States moved to dismiss and to stay discovery. The district court granted the stay. It later granted the motion to dismiss. See Dynamic I, 18 F. Supp. 2d at 148. Taking matters in sequence, the court invoked an FTCA exception, 28 U.S.C. § 2680(h), to dispose of the misrepresentation, libel, slander, and contractual interference claims.[1] See Dynamic I, 18 F. Supp. 2d at 149-51.

---

[1]This statutory proviso exempts from the scope of waived immunity "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." 28 U.S.C. § 2680(h).

-5-

The court found Vega's discrimination claim wanting for several reasons, including the fact that the United States is not a proper party defendant in a suit brought under 42 U.S.C. § 1983. See Dynamic I, 18 F. Supp. 2d at 151.

The district court could have stopped there, but it did not. The court believed that the general scenario described by the plaintiffs arguably encompassed claims for intentional infliction of emotional distress and negligent supervision. See id. at 151-52. Noting that such claims might be permissible under the FTCA, the court gave the plaintiffs an opportunity to file an amended complaint.[2] See id. at 151 (citing Santiago-Ramirez v. Secretary of the Dep't of Defense, 984 F.2d 16, 20 (1st Cir. 1993)), 153. The court cautioned, however, that any amended complaint (a) must be consistent with the notice that the plaintiffs previously had provided to the government via their administrative claim, and (b) "should not merely reformulate the contract, slander, libel and misrepresentation claims which are dismissed herein because the court does not

_____

[2]Because corporations, unlike natural persons, have no emotions, they cannot press claims for intentional infliction of emotional distress. See FDIC v. Hulsey, 22 F.3d 1472, 1489 (10th Cir. 1994). Recognizing this circumstance, the district court properly limited its references to such a claim to Vega. See Dynamic I, 18 F. Supp. 2d at 151, 153.

-6-

have subject matter jurisdiction over them, no matter how Plaintiffs dress them up."  Id. at 153.

The plaintiffs seized this lifeline and filed an amended complaint.  In it, they described for the first time the altercation that allegedly occurred at the 1995 trade show and claimed that USPS hierarchs negligently permitted their underlings to arrest Vega without sufficient cause in front of prospective clients and others.[3]  Vega also proffered a claim for intentional infliction of emotional distress, linking that claim to the same episode.  The United States again moved to dismiss, asserting both lack of subject matter jurisdiction and failure to state a cognizable claim.  See Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Because documents dehors the pleadings were presented to (and considered by) the district court in connection with the motion, the court converted the motion into one for summary judgment.  See Fed. R. Civ. P. 12(b) (providing for conversion of Rule 12(b)(6) motions).  Emphasizing that the plaintiffs' administrative claim failed to mention any facts which would have alerted the government to the possibility of litigation

---

[3]In their amended complaint, their opposition to the government's motion to dismiss, and their brief on appeal, the plaintiffs refer to this vignette under two rubrics:  false arrest and false imprisonment.  For convenience, we refer only to the former — but we use the term in a broad sense that encompasses the latter.

-7-

based on false arrest, the court then ruled that it lacked jurisdiction to entertain the amended complaint. See Dynamic II, 68 F. Supp. 2d at 117-18. This appeal ensued.

## II. ANALYSIS

We note, at the outset, our doubts about the district court's procedural praxis. As a general matter, trial courts should give Rule 12(b)(1) motions precedence. See Northeast Erectors Ass'n of the BTEA v. Secretary of Labor, 62 F.3d 37, 39 (1st Cir. 1995). The conversion principle does not apply in regard to such motions — and for good reason. The court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 890-91 (3d Cir. 1977). Thus, the district court's decision to convert the government's motion to a motion for summary judgment strikes us as unnecessary.

Be that as it may, we need not pass definitively on the propriety of the conversion for two reasons. First, neither party objects to this aspect of the court's ruling, and any error is therefore waived. See Attallah v. United States, 955 F.2d 776, 779 n.3 (1st Cir.1992). Second, this appeal turns on a purely legal question — one that requires a comparison of the

administrative claim with the amended complaint — so characterization of the government's motion has no practical effect. At any rate, the plaintiffs cannot be heard to complain, inasmuch as the summary judgment standard is as favorable to them as any other that they might reasonably request. Cf. United States v. AVX Corp., 962 F.2d 108, 114 n.6 (1st Cir. 1992) (using parallel logic to justify application of Rule 12(b)(6) criteria to a standing challenge). Thus, we do not probe the point more deeply, but, rather, proceed to address seriatim the stay of discovery and the dismissal of the amended complaint.

## A. The Stay of Discovery.

The plaintiffs asseverate that the district court erred in denying them the opportunity to conduct discovery before it adjudicated the government's motion for brevis disposition. Trial courts have broad discretion in determining the timing of pretrial discovery, and appellate courts are reluctant to interfere unless it clearly appears that a "discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989). This discretion obtains where, as here, the question is whether to permit discovery before

deciding jurisdictional issues.  See Crocker v. Hilton Int'l Barbados, Ltd., 976 F.2d 797, 801 (1st Cir. 1992).

Here, the plaintiffs' "denial of discovery" claim fails for two reasons.  First, they raise it too late.  When the government moved to stay discovery in the district court, the plaintiffs did not file an opposition.  See D.P.R. Local Rule 311.5 (stating that "[i]f the respondent opposes a motion, he or she shall file a response within ten (10) days after service of the motion").  Nor did they present in their opposition to the dismissal motion any developed argumentation as to how additional discovery might advance their cause.  Consequently, they forfeited the point.  See United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."); see also Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997) (holding that plaintiffs who fail to preserve their rights below cannot appeal on the ground that they were denied jurisdictional discovery).

In all events, the plaintiffs have not shown an entitlement to pretrial discovery.  Where, as here, a defendant challenges a court's jurisdiction, the court has broad discretion to defer pretrial discovery if the record indicates

-10-

that discovery is unnecessary (or, at least, is unlikely to be useful) in regard to establishing the essential jurisdictional facts. See Noonan v. Winston Co., 135 F.3d 85, 94 (1st Cir. 1998); St. Clair v. City of Chico, 880 F.2d 199, 201-02 (9th Cir. 1989). Orders staying discovery are particularly difficult to set aside in actions against the federal government, where uncontrolled discovery poses a special threat and compelling public policy reasons support stringent limitations on discovery pending the resolution of threshold jurisdictional questions. See 6 James Wm. Moore et al., Moore's Federal Practice § 26.105[3][c], at 26-269 (3d ed. 2000); cf. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (suggesting that, until threshold question of qualified immunity is settled in a suit against a public official, unrestricted discovery should not be permitted).

In this instance, the plaintiffs never asked for jurisdictional discovery, nor have they explained (even at this late date) how discovery, if allowed, would bear on the narrow jurisdictional issue that lies on the doorstep of this case. On this austere record, the district court did not abuse its discretion in staying discovery pending a resolution of the jurisdictional question.

## B. The Notice-of-Claim Provision.

We turn now to the merits of the district court's order. Viewing that order as a ruling on a motion for summary judgment, see supra, we afford plenary review. See Pagano, 983 F.2d at 347. In fulfilling this responsibility, we interpret the record in the light most agreeable to the plaintiffs (the non-moving parties) and draw all reasonable inferences in their favor. See id. Despite this liberal approach, however, we eschew "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

As a sovereign nation, the United States is immune from liability except to the extent that it consents to suit. See Molzof v. United States, 502 U.S. 301, 304 (1992). In general, the FTCA waives the United States's sovereign immunity for tort liability, that is, for claims that allege a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). But this general waiver is far from an open-ended panacea for would-be claimants. For one thing, it must be strictly construed. See Reilly v. United States, 863 F.2d 149,

170 (1st Cir. 1988). For another thing, it is hedged with a myriad of exceptions. See, e.g., 28 U.S.C. § 2680(a)-(h).

Nor is this all. Congress has taken pains to establish an administrative framework that claimants must follow before they can sue under the FTCA. One important component of this framework is the notice-of-claim provision. See 28 U.S.C. § 2675(a) (stating that "an action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied"); see also 28 C.F.R. § 14.2(a) (1999) (similar). This appeal requires us to test the elasticity of the notice-of-claim protocol. On the one hand, the United States maintains that the plaintiffs flouted the terms of the statute and must pay the price for their impertinence. On the other hand, the plaintiffs contend that they complied sufficiently with the law, and that the lower court raised the statutory bar too high. The United States has the better of the argument.

We start this portion of our discussion by delineating which causes of action are at issue here. On appeal, the plaintiffs have not challenged the district court's dismissal of their original complaint, i.e., the court's rejection of the plaintiffs' misrepresentation, libel, slander, contractual

interference, and discrimination claims. With one inconsequential exception, see infra note 5, they did not attempt either to resurrect or to preserve those claims in their amended complaint. Thus, they have forgone any opportunity to revive them. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (explaining that "an amended pleading supersedes the original [which] . . . is treated thereafter as non-existent") (citations and internal quotation marks omitted). For this reason, we train our sights exclusively on the way in which the plaintiffs' administrative claim relates (or, more precisely put, fails to relate) to their amended complaint.

This court has refused to interpret the notice-of-claim requirement woodenly. We have attempted instead to achieve a balance, recognizing that persons wishing to hold the federal sovereign liable in tort must satisfy the strictures of the law, but also recognizing that Congress did not intend to shield the federal fisc behind an impenetrable thicket of lawyerly technicalities. See Santiago-Ramirez, 984 F.2d at 19; Lopez v. United States, 758 F.2d 806, 809 (1st Cir. 1985). The test is an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it

fulfills the notice-of-claim requirement.  See Santiago-Ramirez, 984 F.2d at 20.

Insofar as the events comprising the alleged false arrest are concerned, the plaintiffs' administrative claim fails this test.  Though prolix, that claim did not contain so much as a hint about the alleged false arrest or the incident that spawned it.  To that extent, then, the amended complaint exceeded the scope of the administrative claim.  See, e.g., Orlando Helicopter Airways v. United States, 75 F.3d 622, 625-26 (11th Cir. 1996); Deloria v. Veterans Admin., 927 F.2d 1009, 1011-12 (7th Cir. 1991).  Because a federal court cannot entertain a suit under the FTCA in circumstances in which the plaintiff has failed to satisfy the administrative notice-of-claim requirement, the district court appropriately dismissed the false arrest cause of action.[4]

The plaintiffs have a fallback position.  As they point out, it may well be possible to find the rudiments of claims for intentional infliction of emotional distress and negligent supervision in the penumbra of their administrative claim.

---

[4]We hasten to add that, even had the plaintiffs provided adequate notice, claims arising out of false arrest and imprisonment are not viable under the FTCA.  See 28 U.S.C. § 2680(h).

-15-

Consequently, those causes of action may appear to stand on a somewhat different footing.

However, appearances can be deceiving. <u>Cf.</u> Aesop, <u>The Wolf in Sheep's Clothing</u> (circa 550 B.C.). To the extent that the amended complaint advances claims for intentional infliction of emotional distress and negligent supervision, those claims are inextricably intertwined with the incident involving the false arrest. In other words, regardless of the labels employed in the amended complaint, that complaint, <u>in</u> <u>substance</u>, seeks recovery based solely on an incident that was not mentioned in the plaintiffs' administrative claim.

That ends the matter. The short of it is that the plaintiffs, with one inconsequential exception,[5] have not alleged any injury sustained <u>independent</u> of the false arrest incident. The injuries for which the plaintiffs now seek to recover occurred when Vega was forcibly removed from the convention hall and humiliated in front of onlookers (including customers and family members). Calling a false arrest claim by another name is nothing more than a poorly-disguised effort to achieve by

_____

[5]In addition to alleging false arrest, the amended complaint reiterated that USPS's customer service manager misrepresented to the plaintiffs' clientele that DIT had not achieved proper certification. These averments lead nowhere, because the claim that they portend is barred by 28 U.S.C. § 2680(h). <u>See</u> <u>Dynamic</u> <u>I</u>, 18 F. Supp. 2d at 150.

indirection what cannot be achieved directly.  Courts must guard

zealously against such attempts to circumvent sections 2675(a)

and 2680(h).  See United States v. Neustadt, 366 U.S. 696, 703

(1961).

We need go no further.[6]  Since the plaintiffs' amended

complaint and their administrative claim did not jibe, the

district court appropriately dismissed the amended complaint for

want of subject matter jurisdiction.

**Affirmed.**

----

[6]As the plaintiffs have not alleged any basis for a
negligent supervision claim independent of the arrest incident,
we need not pass upon the government's assertion that such a
claim would be barred by the FTCA's discretionary function
exception, 28 U.S.C. § 2680(a).  See generally Irving v. United
States, 162 F.3d 154, 162-69 (1st Cir. 1998) (en banc)
(discussing that exception).

-17-