**SURCCO, et al., Plaintiffs,**

**v.**

**PRASA; Compañia de Aguas, Defendants.**

**No. 00–1191 DRD.**

United States District Court, D. Puerto Rico.

· June 30, 2001.

Order on Reconsideration July 26, 2001.

Jorge Carazo–Quetglas, Toledo Toledo & Carazo–Quetglas, Hato Rey, PR, Carlos Martinez–Texidor, Martinez–Texidor & Fuster, Ponce, PR, Carlos J. Onetti–Irizarry, San Juan, PR, Luis V. Villares–Sarmiento, Sanchez Betances & Sifre, P.S.C., San Juan, PR, for defendants.

Ana L. Toledo–Davila, San Juan, PR, for plaintiffs.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

The above captioned case is an environmental claim filed by Plaintiffs, an environmental protection organization, Sur Contra la Contaminación ("SURCCO"), and a group of allegedly affected citizens from the Green Hills and Branderi area under the provisions of the Water Pollution Prevention Act (also known as the Clean Water Act), 33 U.S.C. § 1251 et seq., the provisions of the Puerto Rico Nuisance Law, 32 P.R. Laws Ann. § 2761 et seq., and § 1802 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. § 5141. In sum, Plaintiffs are seeking several remedies, to wit: (1) an injunction against Defendants prohibiting further violations to the terms of certain discharge permit; (2) an injunction for the closing and relocation of two pumping stations; (3) the imposition of civil penalties; and (4) the award of damages for mental pain and suffering as well as loss of property.

SURCCO is a non-profit corporation organized under the laws of the Commonwealth of Puerto Rico and allegedly an active participant in the protection of the environment in the South Coast of Puerto Rico. Joining as Plaintiff is a group of citizens, neighbors of the towns of Green Hills and Branderi in Guayama, Puerto Rico. Defendant Puerto Rico Aqueduct and Sewer Authority ("PRASA"), a public corporation, s the owner of the Green Hills and Branderi Pumping Stations in Guayama. Co–Defendant Compañía de Aguas de Puerto Rico, Inc., also a public corporation, operates the Green Hills and Branderi Pumping Stations in Guayama. Both co-Defendants are part of the Publicly Owned Water Treatment Works in Puerto Rico.

The relevant procedural history of the case is as follows. On November 6, 1989, the United States Environmental Protection Agency ("EPA") issued to PRASA the National Pollutant Discharge Elimination System Permit number PR0025445 ("permit") under Section 402 of the Clean Water Act ("Act"), 33 U.S.C. § 1342, for the discharge of certain treated waters form the Guayama Regional Wastewater Plant ("GRWP"). On March 18, 1999, Plaintiff SURCCO sent a dated, certified letter addressed to the "Executive Director, Owner and Operator" of PRASA and to Mr. Fernando Pina, General Manger of Compañía de Aguas de Puerto Rico advising of an imminent civil action pursuant to section 505(a)(1) of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(a)(1)[1], for alleged unauthorized discharges that have occurred in the Branderi Creek, the Branderi Sector of Guayama, the Green Hills Urbanization, and the Algarrobo Urbanization of Guayama. On December 7, 1999, the EPA issued an Administrative Order (CWA–02–2000–3009) initiating an enforcement action concerning the alleged violations object of the instant case. PRASA then submitted an action plan and has invested in excess of $200,000 in compliance with the Administrative Order as to the Green Hills and Branderi Pumping Stations.

On February 10, 2000, SURCCO and a group of Guayama's neighbors filed the

---

1. 33 U.S.C. § 1365(a) Authorization; jurisdiction

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality of agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation...

present complaint in the instant action alleging violations of the GRWTP Permit and seeking injunctive relief, the imposition of civil penalties, and the award of damages for mental pain and suffering.

Pending before the Court is Defendant PRASA and Defendant Compañía de Aguas'[2] Motion to Dismiss Under Rule 12(b)(1) filed on October 27, 2000 (Docket No. 21) along with its Memorandum of Law in Support of Motion. (also Docket No. 21). On December 5, 2000 Plaintiffs filed an Opposition to said motion. (Docket No. 24).

## I. Motion to Dismiss Standard

■ "As a general matter, trial courts should give Rule 12(b)(1) motions precedence." *Dynamic Image Technologies, Inc. v. U.S.*, 221 F.3d 34, 37 (1st Cir.2000). Motions under Rule 12(b)(1) are brought forth to attack two different types of defects: the pleader's failure to comply with Federal Rule of Civil Procedure 8(a)(1)[3] and the Court's actual lack of subject matter jurisdiction—which may exist despite the formal sufficiency of the allegations in the complaint. 5A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 1350 (2d ed. 1990). When the grounds for a Rule 12(b)(1) motion is lack of federal question, as is the case at bar, the pleader must show that the counterpart's claim does not fall under the category of federal question and is frivolous. That is, "the party invoking the jurisdiction of the federal court carries the burden of proving its existence." *Nater v. Riley*, 114 F.Supp.2d 17, 19 (D.P.R.2000). *See Miller v. Hygrade*

*Food Products, Corp.*, 89 F.Supp.2d 643 (E.D.Pa.2000); *Smith v. SSA*, 54 F.Supp.2d 451 (E.D.Pa.1999); *Kronmuller v. West End Fire Co. No.3*, 123 F.R.D. 170 (1988). Further, even though the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present, when the factual allegations of jurisdiction are attacked by a Motion to Dismiss under Rule 12(b)(1), courts are not limited in their review to the mere allegations contained in the complaint. Thus, "the Court, without conversion [to summary judgment], may consider extrinsic material and, to the extent it engages in jurisdictional fact finding, is free to test the truthfulness of the plaintiff's allegations." *See Dynamic Image*, 221 F.3d at 37; *Halstead v. Motorcycle Safety Foundation, Inc.*, 71 F.Supp.2d 464, 468 (E.D.Pa.1999) ("[A]ny evidence may be reviewed and any factual disputes resolved regarding the allegations giving rise to jurisdiction, since it is for the Court to resolve all factual disputes involving the existence of jurisdiction."). If, and only when, it appears that the non-moving party will not be able to assert a colorable claim of subject matter jurisdiction, may the Motion to Dismiss be granted and the complaint dismissed. *See Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884 (3d Cir.1977).

## II. Discussion

In the Motion to Dismiss, Defendants allege that this Court does not have juris-

---

**2.** On November 16, 2000, Defendant Compañía de Aguas filed Motion for Joinder of Motion to Dismiss Filed by PRASA (Docket No. 22). On February 26, 2001, this Court granted said motion (Docket No. 26). Consequently, the discussion herein regards both co-Defendants, PRASA and Defendant Compañia de Aguas.

**3.** Failure to comply with Rule 8(a)(1) occurs when the allegations in the complaint are insufficient to show that the federal court has jurisdiction over the subject mater of the case. That is, the complaint is in fact defective and must be dismissed regardless of the actual existence of subject matter jurisdiction unless said deficiency is cured. *See Sierra Club v. Shell Oil Co.*, 817 F.2d 1169 (5th Cir.1987).

diction over this suit because the jurisdictional prerequisites of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)[4], were not met by Plaintiffs. That is, Plaintiffs allegedly failed to assert an ongoing violation depriving this Court of subject matter jurisdiction. Likewise, Defendants maintain that, even if the jurisdictional prerequisites had been met, the suit should be dismissed because Plaintiffs failed to state a cognizable claim under the CWA for which they have standing to bring suit. (Docket No. 21). Defendants also aver that Plaintiff SURCCO, Inc. has not suffered the "injury in fact" necessary to have standing and should be dismissed from the case. Finally, Defendants sustain that the Environmental Protection Agency ("EPA") is diligently prosecuting an enforcement action for the same violations alleged in the complaint, thus barring Plaintiff's action. The Court addresses Defendants' allegations seriatim.

## A. Subject Matter Jurisdiction

### 1. *On Going Violation:*

Defendants claim that a situation of either continuous or intermittent violations, or a reasonable likelihood that the pollution will continue in the future must be alleged for this Court to have subject-matter jurisdiction. In support of the lack of subject-matter jurisdiction, Defendants rest on the case of *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). The Supreme Court in *Gwaltney* stated that the "interest of the citizen-suit is forward-looking... the harm sought to be addressed by the citizen-suit lies in the present or the future, not in the past." *Id.*

at 59, 108 S.Ct. 376. According to Defendants, Plaintiffs failed to comply with the aforementioned standard. In Defendants Motion to Dismiss, Defendants aver that Plaintiffs have made no allegation that there is a reasonable likelihood that the violations incurred by the Defendants will continue. Plaintiffs, so say Defendants, have only alleged "as an afterthought," that they have suffered and continue to suffer irreparable harm, yet Plaintiffs do not claim a reasonable likelihood of continuance to the violations. Defendants assert that lacking continuance of violations allegations causes insufficiency as to subject matter jurisdiction. Plaintiffs, on the other hand, affirm in their Opposition that Defendants' violations to the CWA are not wholly past but rather *continuous* and *egregious* in nature as defined in *Gwaltney* (emphasis ours). (Docket No. 24). Plaintiffs sustain this allegation of ongoing violation by submitting copies of Notices of Bypasses to the EPA and Sworn Statements from members of both communities that attest to the multiplicity of ongoing illegal discharges and bypasses that Defendants continue to incur, as well as statements relating how they have been personally affected.

As stated in *Gwaltney,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), it is not necessary for Plaintiffs to prove their allegation of ongoing noncompliance with the conditions of the permit under the provisions of the CWA, 33 U.S.C. § 1251, et seq. Mere allegations of violation are sufficient to establish an ongoing harm since the "good faith" pleading requirements[5] are sufficient to protect Defendants

4. As stated in § 101 of the Clean Water Act, 33 U.S.C. § 1251, Congress enacted the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

5. The "good faith" pleading requirement is derived from FED. R. CIV. P. 11(b)(2) which states:

(b) **Representations to Court.** By presenting to the court (whether by signing, filing,

from frivolous allegations. "Moreover, allegations of injury are sufficient under this Court's standing cases to invoke the jurisdiction of a court, and the Constitution does not require that the plaintiff offer proof of the allegations as a threshold matter." *Gwaltney*, 484 U.S. at 50, 108 S.Ct. 376. Therefore, the Court, accepting as true Plaintiffs' well plead facts and drawing all reasonable inferences in favor of Plaintiffs, as established in *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), concludes that the court has subject matter jurisdiction over the above captioned case. *See also Dynamic Image* 221 F.3d at 36 ("We take the plaintiffs' version of the facts, consistent with record support.")

## 2. SURCCO Standing

■ "A motion to dismiss for want of standing implicates the court's subject matter jurisdiction, and is therefore appropriately brought under Federal Rule of Civil Procedure 12(b)(1)." *Duffy v. Halter*, 2001 WL 253828, 2001 U.S. Dist. LEXIS 2644 at *5 (E.D.Pa. Mar 13, 2001). This Court must reiterate that "our standing cases uniformly recognize that allegations of injury are sufficient to invoke the jurisdiction of a court...we made clear that a suit will not be dismissed for lack of standing if there are sufficient 'allegations of fact'—not proof—in the complaint or sup-

porting affidavits." *Gwaltney*, 484 U.S. at 65, 108 S.Ct. 376. Further, the Supreme Court of the United States has repeatedly held that organizations must meet three (3) requirements in order to establish Article III standing. Plaintiff organization must exhibit "injury in fact,"[6] establish causation,[7] and must demonstrate redressability.[8] "These requirements together constitute the 'irreducible constitutional minimum' of standing which is an 'essential and unchanging part' of Article III's case-or-controversy requirement..." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

■ Defendants allege that Plaintiff SURCCO does not possess Article III standing. Without this required standing, Plaintiff SURCCO should be dismissed. Defendants insists that SURCCO does not plead any facts demonstrating sufficient interest, injury or causation to establish its standing. (Docket No. 21). They also state that SURCCO does not, at any point in the complaint, allege that the individually named parties claiming specific injuries from the violations are members of the organization. Plaintiff SURCCO has, however, refuted Defendants' attack as to Arti-

---

submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) ...

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

**6.** Injury in fact is defined as "a harm that is both 'concrete and actual or imminent', not conjectural or hypothetical." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

**7.** Causation is defined as "a 'fairly... traceable' connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.*

**8.** Redressability is defined as "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Id.*

cle III standing by alleging, and sustaining with exhibits, that its members are directly affected by Defendants' violations since they cannot enjoy swimming, boating or fishing in the Branderi Creek due to the toxic pollutants that are discharged by Defendant. SURCCO further maintains that they cannot enjoy their homes and that the value of their homes has decreased due to the pestilence that emanates from said creek. It is in these same exhibits that community members establish the alleged injuries they are suffering. Likewise, an exhibit (Docket No. 27, Exhibit 3) is presented in which the president of SURCCO makes a claim of injury in representation of the people of the towns of Green Hills and Branderi. The Court opines that SURCCO has entitlement to invoke jurisdiction:

> [e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.... So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) (citing *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2212, 45 L.Ed.2d 343 (1975)). Since SURCCO has sufficiently shown injury in fact suffered due to Defendant's actions, the Court determines that Plaintiff SURCCO does in fact have standing.

## B. *Cognizable Damages Claim Under the Clean Water Act:*

■ In the Motion to Dismiss (Docket No. 21), Defendants aver that Plaintiffs have failed to state a damages claim cognizable under the CWA. Defendants appropriately call upon § 505(a) of the CWA, 33 U.S.C. § 1365(a), which only entitles a prayer for an order for injunctive relief and/or the imposition of civil penalties in a citizen suit. Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), states:

> ...The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty as the case my be, and to apply any appropriate civil penalties under section 1319(d) of this title.

Plaintiffs, surprisingly, ignore Defendants' claim of lack of entitlement to damages under the statute and make no allegations to counter Defendants' argument. It is evident that the CWA *only allows* civil suits which pray for injunctive relief and/or civil penalties. At no point does the CWA permit a civil suit which claims personal damages. The Court briefly explains.

It must be noted that the citizen suit provision in the Clean Water Act was categorically modeled on the analogous provision of the Clean Air Act, 42 U.S.C. § 7604 (1976 ed., Supp. III). *See* S. Rep. No. 92–414 at 79. *See Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). According to legislative history, the Clean Air Act holds unequivocal indications that private enforcement suits are intended to be limited to the injunctive relief provided for by the Act. "[C]onferring additional rights on the

citizen may burden the courts unduly ... [T]he citizen suit provision of S. 4358 has been carefully drafted to prevent this consequence form arising... [I]t should be noted that the bill makes no provision for damages to the individual." 116 Cong. Rec. 33104 (1970) (statement of Sen. Hart). It is, thus, established that both the Clean Air Act and, consequently, the Clean Water Act, are "limited to seek [sic] abatement of violation of standards established administratively under the act, and expressly excludes damage actions." *Id.* at 3201 (statement of Sen. Muskie). *See Middlesex County Sewerage Authority,* 453 U.S. at 18 n. 27, 101 S.Ct. 2615.

■ The Supreme Court has traditionally held that statutory provisions conferring authority upon a private citizen to sue are narrowly construed. *See Garcia v. Cecos Int'l,* 761 F.2d 76 (1st Cir.1985). Further, "[t]he Supreme Court has demanded strict adherence to statutory provisions for citizens' suits in environmental litigation." *Garcia,* 761 F.2d at 81. *See Middlesex,* 453 U.S. 1, 101 S.Ct. 2615. The established standard district courts must follow when presented with a personal damages claim in a Clean Water Act citizen suit has been to first inquire as to Congress' Legislative intent. "We look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief. Then we review the legislative history and other traditional aids of statutory interpretation." *Middlesex,* 453 U.S. at 13, 101 S.Ct. 2615. *See also Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

The Supreme Court has also affirmed that, "when the remedial devices provided in a particular Act are sufficiently comprehensive," they are enough to evidence congressional intent and foreclose private actions. *Middlesex* 453 U.S. at 20, 101 S.Ct. 2615.

The CWA contains exceptionally intricate enforcement provisions that confer authority to sue the government officials and private citizens. Section 1319 of the CWA allows the EPA Administrator to respond to violations of said Act by emitting compliance orders (as was done in this case—Docket No. 21, Exhibit A) and civil suits (also carried forth in the case at bar—Docket No. 31, Civil No. 01–1709(JAF)), 33 U.S.C. §§ 1309, 1319. The Administrator also has available to him the imposition of civil and criminal penalties of up to $10,000 and $25,000 respectively per day of violation. 33 U.S.C. § 1319(c)(d). Also, any interested person may seek judicial review in the United States Courts of Appeals of the Administrator's actions (including the establishment of effluent standards and/or the issuance of permits for discharges of pollutants, among others). *See* 33 U.S.C. § 1369. Moreover, this array of enforcement mechanisms are then *supplemented* by the clear-cut citizen suit provision in § 1365(a) which "authorize private persons to sue for injunctions to enforce these statutes," *Middlesex,* 453 U.S. at 14, 101 S.Ct. 2615, not allowing for personal damages.

It is readily seen in the elaborate, comprehensive enforcement scheme presented in the CWA provisions that Congress' intent to authorize by implication additional judicial remedies for private citizens suing under the CWA, as is the case before us, *cannot* be presupposed. As stated in *Middlesex,* 453 U.S. at 15, 101 S.Ct. 2615, "it is an elemental canon of statutory construction that where a statute expressly pro-

vides a particular remedy or remedies, a court must be chary of reading others into it." When a firm manifestat on of a contrary congressional intent is missing, this Court must conclude that Congress provided precisely the remedies enumerated. Accordingly, this Court finds that Defendants' allegation of lack of cognizable claim for personal damages is well taken. Regardless of their claim of a common nucleus of operative facts, Plaintiff cannot, under the CWA, make a prayer for personal damages. The only remedies available to Plaintiffs under the CWA are for injunctive relief and civil penalties.

## C. EPA's Diligent Prosecution

■ Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B), establishes that a suit cannot be brought forth "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action... to require compliance with the standard limitation, or order..." Defendant sustains that, prior to Plaintiffs' filing of the complaint, the EPA had already commenced and was diligently prosecuting an enforcement action against Defendants PRASA and Compañía de Aguas. Pursuant to the mandate of *North and South Rivers Watershed Association, Inc. v. Town of Scituate*, 949 F.2d 552 (1st Cir.1991), a citizen suit under the CWA is barred when a State or the EPA Administrator is diligently prosecuting an existing action for the same violations. Defendant maintains that since EPA required Defendants to undertake repairs and improvements, to develop maintenance programs, to comply with all provisions of the permit, and to cease all discharges, this suit is

barred. Plaintiffs, on the other hand, hold the contrary stating that since in *Jones v. Lakeland*, 224 F.3d 518, 522 (6th Cir.2000) the Court concluded that "the plain and unambiguous language of 33 U.S.C. § 1365(a) precludes a citizen's suit only if the Administrator of the EPA or a State is diligently prosecuting an enforcement action in a court of the United States, or a State," and, since the EPA failed to prevent the violations that have occurred after the administrative order was issued, this case is not barred. (Docket No. 24).

In *Jones*, 224 F.3d at 522, as Plaintiff has stated, the Court did not bar the citizen suit for it believed that the Tennessee Department of Environment and Conservation ("TDEC") was not "diligently prosecuting an enforcement action *in a court of the United States or in a State.*"[9] (emphasis ours) The Court understood that diligent prosecution precludes a citizen suit only if the Administrator of the EPA or a State is "diligently prosecuting an enforcement action in a court of the United States or of a State." *Id.* Their position was that since the TDEC was an administrative agency prosecuting the action not in a Federal or State court, an actual diligent prosecution was nonexistent. "Thus, since neither the State's Water Control Board, nor the TEDC rise to the level of a federal or a State court, the plaintiff's citizen's suit is not precluded..." *Jones*, 224 F.3d at 522.

However, the Supreme Court of the United States and the First Circuit Court of Appeals have held that typical or traditional agencies[10] are endowed "with the

---

9. The *Jones* Court followed the reasoning of *Friends of the Earth v. Consolidated Rail Corporation*, 768 F.2d 57, 63 (2nd Cir.1985).

10. According to the Supreme Court, traditional agencies are "agencies possessing a unitary structure." *Martin, Id.* The First Circuit

Court of Appeals defines a typical agency as "an agency that would combine rulemaking, prosecutorial, and adjudicative functions." *Donovan v. Amorello & Sons, Inc.*, 761 F.2d 61, 65 (1st Cir.1985).

normal complement of adjudicative powers." *Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 154, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). That is, agency adjudication is completely allowable, particularly when so defined within the agency's regulations. Notwithstanding, the Sixth Circuit, though not alone in its opinion, understands that administrative agencies must prosecute diligently in a State or Federal court, therefore, the actions brought before the EPA are not barred. On the other hand, the First Circuit has a different approach:

> The primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where *Federal and State authorities* appear unwilling to act. Congress has found it necessary expressly to "recognize, preserve and protect the *primary responsibility and rights of the States* to prevent, reduce and eliminate pollution." 33 U.S.C. § 1251(b) (emphasis supplied). It follows that "the citizen suit [under section 505] is meant to supplement rather than to supplant governmental [enforcement] action." *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). Presumably, then, when it appears that governmental action under either the Federal or comparable State Clean Water Acts begins and is diligently prosecuted, the need for citizen's suits vanishes. *Gwaltney*, 484 U.S. at 61, 108 S.Ct. 376, (first emphasis ours).
>
> The Supreme Court in Gwaltney sketched the relationship between governmental and section 505 citizen enforcement actions. "The great volume of enforcement actions [are intended to] be brought by the State," citizen suits are proper only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." *Gwaltney* 484 U.S. at 60, 108 S.Ct. 376, (citing S. Rep. No. 92-414, p. 64 (1971), reprinted in 2A Legislative History of the Water Pollution Control Act Amendments of 1972, p. 1482 (1973)). Where an *agency* has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored. (emphasis ours).

*Scituate*, 949 F.2d at 555, 557. Because of the well articulated mandate established by the First Circuit, the Sixth Circuit's opinion in overriden. The Court briefly explains. The EPA by its very nature belongs to that class of typical or traditional agencies endowed with adjudicative powers. This agency, by employing its adjudicative powers, investigated and determined that Defendants were in violation of EPA's regulations and, consequently, issued an Administrative Order which submitted Defendants to a strict compliance schedule so as to correct the source of the violations.[11]

Further, the issue at bar is not whether the EPA's actions can be effectively prosecuted in a Federal or State court. A sharper focus on the issue is whether or not EPA was diligently prosecuting an enforcement action at the time this suit was filed. In *Scituate*, 949 F.2d at 556, the Court of Appeals established that "[t]he focus of the statutory bar to citizen's suits is not on state statutory construction, but on *whether corrective action already taken and diligently pursued by the government*

---

**11.** The First Circuit Court of Appeals held in *North and South Rivers Watershed Association, Inc. v. Town of Scituate*, 949 F.2d 552, 557 (1st Cir.1991) that a "[s]tate Order represents a substantial, considered and ongoing response to the violation, and that the DEP's [the State version of the EPA] enforcement action does in fact represent diligent prosecution."

*seeks to remedy the same violations as duplicative civilian action."* (emphasis ours). To duplicate the EPA's enforcement actions with a civil suit impedes and/or obstructs the environmental remedy efforts rather than supplement them. Logically, as *Gwaltney*, 484 U.S. at 60-61, 108 S.Ct. 376 stated, and *Scituate*, 949 F.2d at 555 reiterated, "... when it appears that governmental action under either the Federal or comparable State {Clean Water Act} begins and is diligently prosecuted, the need for citizen's suits vanishes."

■ As was the case in *Scituate*, 949 F.2d at 557, Defendants in the case at bar have more than sufficiently brought forth evidence of compliance through expenditures incurred to accommodate its pumping stations as required by the EPA. Further, multiple reports have been rendered to the EPA by Defendants detailing what projects are being carried out to repair the sources of the violations. Moreover, the Administrative Order clearly leaves open the possibility of imposing further penalties if, upon review by EPA, Defendant continues to be in violation. *See Scituate*, 949 F.2d at 556 (leaving "the order open [for] the possibilities of imposing penalties upon [the defendant].") Finally, this Court finds Plaintiffs' argument that diligent prosecution is nonexistent, based on of EPA's alleged inactivity after Defendants' submission to the EPA requesting the Administrative Order's termination, to be completely unfounded on the record. To the contrary, because of Defendants' compliance together with EPA's refusal to close the Administrative Order issued against Defendants, and the potentiality of further fines should they be warranted, this Court concludes that the EPA's enforcement actions have not ceased. Because of the above stated reasoning, the Court concludes, based on the record, that

the EPA has been diligent in their prosecutorial duty. Therefore, this action is **barred** because of the EPA's diligent prosecution of violations which are merely duplicated in this citizen suit, *Scituate*, 949 F.2d at 556. The claims under the CWA must be **dismissed**.

### III. Conclusion

Based on the aforementioned reasons, the Court **grants** Defendants' motion to Dismiss. Plaintiffs' claims against Defendants under the CWA are hereby **DISMISSED WITHOUT PREJUDICE**.

The dismissal of Plaintiffs' federal claim leaves only Plaintiffs' claim under Puerto Rico law. Pursuant to 28 U.S.C. § 1367(c) and *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966), the Court declines to exercise supplemental jurisdiction over Plaintiffs' Commonwealth claims against Defendant. *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995). "As a general principle, the unfavorable disposition of a Plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Id.* (citations omitted). Accordingly, Plaintiffs' claims under Puerto Rico Law are **DISMISSED WITHOUT PREJUDICE**.

Judgment shall be issued accordingly

**IT IS SO ORDERED**.

### *ORDER ON RECONSIDERATION*

Pending before the Court is plaintiffs' motion to amend judgment, pursuant to Fed.R.Civ.P. 59(e). The Court entered judgment on June 30, 2001, dismissing the above captioned case. (Docket No. 34). Under Rule 59(e) a motion for reconsideration must be filed with the Court within ten days after judgment has been entered. Fed.R.Civ.P. 59(e). In this case, plaintiffs'

motion was filed on July 13, 2001, thirteen days after judgment was entered. However, plaintiffs state that they did not receive from the Clerk's Office the Opinion and Order issued by the Court until July 10, 2001, exactly ten days after judgment had been entered. (Docket No. 35). In light of the aforementioned, the Court will entertain plaintiffs' motion under the Rule 56(e) standard.

A motion under Rule 59(e) "must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice." *Waye v. First Citizen's National Bank*, 846 F.Supp. 310, 313 (M.D.Pa.1994). *See Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D.Miss.1990). Further, "[a] motion for reconsideration is not to be used as means to reargue matters already argued and disposed of. Nor it is to be used to put forth additional arguments which could have been made but which the party neglected to make before judgment." *Id.* With that said, the Court will now address plaintiffs' contentions.

Plaintiffs essentially allege that the Court erred in its June 30, 2001, Opinion and Order for the following reasons: 1) the Court wrongly concluded that the Environmental Protection Agency's ("EPA") Administrative Order ("AO") or civil complaint constituted "aggressive prosecution;" 2) the Court did not take into consideration plaintiffs' allegations in the Amended Complaint; 3) made factual mistaken conclusions; and 4) that plaintiffs did not allege personal damages under the Clean Water Act ("CWA").

The Court is unpersuaded by plaintiffs' arguments in favor of reconsideration. First, the Court never stated in its Opinion and Order that the EPA's AO constituted "aggressive prosecution," but concluded that a diligent prosecution of the alleged violations committed by defendant was ongoing with the EPA. In addition, the Court did not state that the instant suit was frivolous. As stated in the Opinion and Order, "[s]ection 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B) establishes that a suit cannot be brought forth 'if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action... to require compliance with the standard limitation, or order...'" (Docket No. 33). Further, in *North and South Rivers Watershed Association, Inc. v. Town of Scituate*, 949 F.2d 552 (1st Cir.1991), the First Circuit stated that a citizen suit under the CWA is barred when a State or the EPA Administrator is diligently prosecuting an existing action for the same violations.

Plaintiffs aver in support of their contention that the Court ignored the fact that "plaintiffs established at least 91 violations of the CWA" that have occurred "after USEPA's December 1999 AO," therefore, the EPA is not diligently prosecuting the violations allegedly committed by defendants in this case. The Administrative Order clearly leaves open the possibility of imposing further penalties if, upon review by EPA, Defendant continues to be in violation. *See Scituate*, 949 F.2d at 556 (leaving "the order open [for] the possibilities of imposing penalties upon [the defendant]."). Moreover, because of Defendants' compliance together with EPA's refusal to close the Administrative Order issued against Defendants, and the potentiality for fines to be imposed in case of further violations, the EPA's enforcement actions have not ceased. Accordingly, this Court is still convinced that this action is still being prosecuted for violations which are merely duplicated in this citizen suit. *Scituate*, 949 F.2d at 556.

Plaintiffs cite the Supreme Court case *Friends of the Earth v. Laidlaw Environmental Services,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) as jurisprudence warranting reconsideration. However, *Laidlaw* concludes that the 13 violations under the CWA after administrative prosecution granted plaintiff *standing* to bring citizen suit *after* a settlement was reached between parties in original action and *not during* the EPA's actual prosecution as is the case at bar. That is, in *Laidlaw,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610, violations occurred *after* an action was ended and a new action was filed in court for new violations to the permits, thus the new action was not barred. In the case at bar, the action is *in the process* of being investigated and prosecuted by the EPA, thus, from the plain reading of the statute, 42 U.S.C. § 1365(b)(1)(B), this Court cannot view the Administrative action as ceased, hence barring this forum form viewing said action until the Administrative procedures have been exhausted, as they had been in *Laidlaw,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610.

Second, contrary to plaintiffs' averments, the amended complaint was taken into consideration by the Court when it adjudicated defendant's motion to dismiss. In fact, the exhibits included in the amended complaint were cited by the Court in its Opinion and Order. Therefore, it is unquestionable that the Court did in fact take into consideration plaintiffs' amended complaint. *See* Opinion and Order, page 166.

Third, regarding plaintiffs' claim for personal damages, as stated in this Court's Opinion and Order, this Court cannot entertain plaintiffs' claims under Puerto Rico law under supplemental jurisdiction, because plaintiffs' federal claims are barred from prosecution in this forum. *See Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a Plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

Finally, plaintiff was correct in bringing to the Court's attention that Compañía de Aguas is not a public corporation, but in fact a private corporation, subsidiary of the French multinational Vivendi. Accordingly, this Court's Opinion and Order is amended to reflect the aforementioned.

For the foregoing reasons, plaintiffs' motion to amend judgment is hereby **DENIED.**

**IT IS SO ORDERED.**